OPINION OF THE COURT
Robert A. Harlem, J.
In these consolidated declaratory judgment actions, each insurance carrier moves for summary judgment under CPLR 3212.
On July 7,1978, at the home of Rick and Jan Kingsbury, an injury was suffered by David Kingsbury while helping his brother, Rick Kingsbury, replace a bald spare tire to be used on the car of Jan Kingsbury. The tire was obtained *736 from the father of Rick Kingsbury, and it was mounted on a rim which was not appropriate for the car. It was while the tire was being removed from the rim to be placed on a proper wheel that a crowbar slipped from the hand of Rick Kingsbury striking David in the eye, and resulting in a total loss of vision of the right eye.
It develops that Rick Kingsbury did not then drive an automobile and was unlicensed. The car belonged to his wife, Jan Kingsbury, and it had the customary liability coverage issued by Utica Mutual Insurance Company. The coverage is limited to $10,000. At the same time, Rick and Jan Kingsbury were also covered by a homeowners insurance policy issued by Farmers Fire Insurance Company with insurance in the amount of $100,000. This policy excluded any bodily injury “arising out of ownership, maintenance, operation, use, loading or unloading of any vehicle owned or operated by, or rented or loaned to any insured.” The automobile liability policy provided coverage for bodily injury “arising out of the ownership, maintenance or use of the owned automobile.” It also afforded coverage to anyone using the vehicle with the permission and consent of the insured.
Both insurance companies have served written notice of disclaimer of coverage in an action brought by David Kingsbury against Rick and Jan Kingsbury. These declaratory judgment actions seek a determination of the obligations of the respective carriers to provide coverage.
It is fundamental that where a term in a contract of insurance is unambiguous it will be given its ordinary, commonsense meaning, but where such a term is ambiguous it will be construed in a manner that is most favorable to the insured (State Farm Mut. Auto. Ins. Co. v Westlake, 35 NY2d 587; Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27). This is particularly true where the ambiguous provision is exclusionary in nature (Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356; Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386; American Home Assur. Co. v Hartford Ins. Co., 74 AD2d 224; Allstate Ins. Co. v Klock Oil Co., 73 AD2d 486). It has also been indicated that where a coverage clause in an automobile liability policy and an exclusionary clause in a homeowners policy employ *737 identical language they should be construed identically in order to avoid the possibility that some occurrence could escape coverage under both policies (United Servs. Auto. Assn. v Aetna Cas. & Sur. Co., 75 AD2d 1022).
There is a broad judicial policy of liberal construction of insurance policies in order to give both the ostensible insured and any victim of a personal injury the benefit of insurance coverage (Roche v United States Fid. & Guar. Co., 247 App Div 335, affd 273 NY 473). The facts in the instant action are distinguishable from those wherein a liberal construction is put forth, in that there is a homeowners policy which would be available in the event that the automobile insurance did hot apply. The decision in this action would not pose the problems encountered except for the fact that there is the homeowners policy. In its absence, there is no question that the automobile liability carrier would be found to be obligated to provide coverage. Since the homeowners policy would afford so many more dollars of insurance coverage, it may seem desirable to hold them as having a duty to extend protection and indemnity. While such a result may seem pragmatically desirable, it could have some abiding unfortunate impact when a similar factual pattern is presented without the availability of a homeowners policy. Initially, the language of both policies is sufficiently clear so that it cannot be said that there is an ambiguity.
In United Servs. Auto. Assn. v Aetna Cas. & Sur. Co. (supra), it was noted that not every injury which occurs in or near a motor vehicle is covered by a phrase “use or operation”. It was therein said that the accident must be connected with the use of an automobile qua automobile. No coverage was found where an infant passenger was struck in the eye by a wadded up gum wrapper projected as a “spitball” by another child.
In a Louisiana decision, Heiser v Gibson (386 F Supp 901), the court expressed the view that the application of the exclusionary language of a homeowners policy turns upon the source of the injury and not the theory of liability. There is some uncertainty as to whether this would be the rule in New York State. In Cosmopolitan Mut. Ins. Co. v Baltimore & Ohio R. R. Co. (18 AD2d 460), it was held that *738 an examination of the causal relationship between the activities engaged in and the accident is required in order to determine the existence of coverage. In that case, while the injury occurred in the course of unloading a vehicle, no obligation to provide insurance protection was required, since the injury resulted from a condition independent of the unloading activity. In Cooperative Fire Ins. Co. of Catskill, N. Y. v Vondrak (74 Misc 2d 916), it was found that upon causes of action for common-law negligence and a violation of the Dram Shop Act (General Obligations Law, § 11-101), the homeowners carrier was required to defend the purveyor of the alcoholic beverages even though the injury stemmed from an automobile accident. It would seem, then, that more than just an examination of the source of the injury is required.
The act of Rick Kingsbury in removing the tire from the rim constitutes “maintenance”, rather than “use”, as those terms are used in the policy. Counsel for both parties have cited authorities which addressed the matter of use, but such decisions do not bear upon the issues to be determined (see Gering v Merchants Mut. Ins. Co., 75 AD2d 321; Lumbermen’s Mut. Cas. Co. v Logan, 88 AD2d 971; United Mut. Fire Ins. Co. v Jamestown Mut. Ins. Co., 242 App Div 420, affd 267 NY 576; Roche v United States Fid. & Guar. Co., 247 App Div 335, affd 273 NY 473, supra).
There is a dearth of judicial precedent wherein the definition of “maintenance” as used in an automobile liability policy is ventured. In Indiana Ins. Co. v Winston (377 So 2d 718) maintenance was defined as the labor of keeping something in a state of repair or efficiency, including acts relative to the external and mechanical condition of the vehicle. Further, the term maintenance is said to include acts of either commission or omission relative to the external or mechanical condition of the vehicle (6B Appleman, Insurance Law & Practice [Buckley ed], § 4315).
A perusal of the facts in this case and of the pleadings in the personal injury action demonstrates that the sole basis for liability is the claim of negligence in removing the tire from the rim. This is, in every sense of the word, an act of maintenance. While no reported cases presenting a similar factual pattern can be found in the State of New York, a *739 practically identical setting is described in Morris v American Liab. & Sur. Co. (322 Pa 91), wherein the plaintiff was injured when the rim of a wheel was being hammered into place. In that action, coverage was afforded under the “ownership, maintenance, manipulation or use” clause of the policy. The tire is such an intrinsic part of the mechanism of the car and its over-all function, that any verbiage to justify the act of its replacement as maintenance would seem to be a redundancy.
In view of the observations made, and since there is no assertion in the personal injury action that there was any condition of the premises where the activities were taking place or in any other aspect of the work except as to the manner in which the tire was being removed, summary judgment is granted determining that Utica Mutual Insurance Company, the automobile liability carrier, is obliged to defend and afford coverage. Farmers Fire Insurance Company, the homeowners policy issuer, is exonerated from any liability for coverage.