NORTHERN INSURANCE COMPANY
OF NEW YORK, Petitioner and
Cross–Respondent,

v.

Anne L. EKSTROM, Respondent and
Cross–Petitioner.

No. 88SC336.

Supreme Court of Colorado,
En Banc.

Dec. 18, 1989.

Hall & Evans, Eugene O. Daniels and Malcolm S. Mead, Denver, for petitioner and cross-respondent.

Bruce H. DeBoskey, P.C., Bruce H. De-Boskey, David L. Hiller, and Shelly B. Don, P.C., Shelly B. Don, Denver, for respondent and cross-petitioner.

Justice ERICKSON delivered the Opinion of the Court.

Northern Insurance Company of New York (Northern) petitioned for certiorari asserting that the court of appeals, in *Northern Insurance Co. v. Ekstrom*, 762 P.2d 741 (Colo.App.1988), erred in holding that comprehensive general liability and special multi-peril liability coverage that excluded liability for injuries arising out of the ownership, operation and use of an automobile did not exclude a claim based on negligent entrustment of an automobile. Anne L. Ekstrom cross-petitioned for certiorari to review that part of the court of appeals decision that found Northern was liable for postjudgment interest only on the amount of the policy's liability limit. We granted both petitions and now reverse the court of appeals determination that coverage was provided for the negligent entrustment claim. Since our conclusion that the Northern policy excludes coverage for a claim of negligent entrustment renders the interest issue moot, we now dismiss Ekstrom's cross-petition for certiorari. Accordingly, we reverse and return this case to the court of appeals with directions to remand to the district court with directions to vacate the judgment for Ekstrom and to enter judgment for Northern.

## I.

Ekstrom was injured when her car was struck by a truck driven by Kenneth Hobbie, an employee of Mallow Plating Works, Inc. (Mallow), Northern's insured. It is unclear from the record whether the truck driven by Hobbie was owned by Mallow. Ekstrom contends the truck was actually owned by an officer of Mallow, and was on

loan to the company when the accident occurred.[1] At the time of the accident, Mallow was insured by Maryland Casualty Company (Maryland) under an automobile liability policy with a limit of $500,000 per occurrence. Mallow was also insured under a liability policy issued by Northern. The Northern policy contained both comprehensive general liability and special multi-peril liability provisions, and also had a liability limit of $500,000 per occurrence. Under the comprehensive general liability portion, the policy provided that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A bodily injury or
>
> Coverage B property damage
>
> to which this insurance applies caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

The special multi-peril coverage provision in the policy is similar, but applies to bodily injury or property damage "arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises."

Both coverages provided that the policy did not apply

> to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
>
> (1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or
>
> (2) any other automobile or aircraft operated by any person in the course of his employment by any insured....

Ekstrom filed suit against Mallow, Hobbie, and the owner of the truck, alleging that Mallow was liable for the negligence of Hobbie under the doctrine of *respondeat*

---

**1.** The disputed factual issue on ownership of the automobile does not affect our resolution of this case.

*superior.* Additionally, Ekstrom alleged that Mallow negligently entrusted the vehicle to Hobbie, and was negligent in hiring, retaining and supervising Hobbie. Trial was to a jury which found, through special verdict forms, that Mallow was negligent in hiring, retaining, supervising and entrusting the vehicle to Hobbie, and that Mallow's negligence was the proximate cause of injury to Ekstrom. The jury awarded Ekstrom damages in the amount of $1,982,000. Judgment was entered against Mallow and Hobbie for $1,982,000 together with prejudgment interest in the amount of $294,179 and $3,100 in costs, for a total of $2,279,279. Maryland deposited the $500,000 policy limit and approximately $301,000 in interest on the entire judgment into the registry of the court.

In July 1985, Ekstrom brought a garnishment proceeding against Maryland, seeking the proceeds of the Northern liability policy. Pursuant to a stipulation, Northern replaced Maryland as the garnishee. The parties also stipulated that although Maryland and Northern were subsidiaries of the same corporate parent, they were separate corporate entities sharing a single claims adjustment office. The stipulation further provided that employees of Maryland evaluated the respondent's claims for both Maryland and Northern. In responding to the writ of garnishment, Northern denied that it held or possessed any personal property belonging to Mallow, stating that the policy did not cover claims against its insured for negligent entrustment of an automobile. The trial court found in favor of Ekstrom, and entered judgment against Northern for $500,000. Ekstrom was also awarded postjudgment interest on the policy limit of $500,000, although she claimed that she was entitled to interest on the entire outstanding judgment. The court of appeals affirmed the order of the trial court after both parties appealed.

We granted Northern's petition for certiorari to review the court of appeals decision that the policy covered a claim for negligent entrustment of an automobile,[2] and also granted respondent's cross-petition for review of that part of the decision affirming the allowance of postjudgment interest on the policy limit only. We must determine whether a general liability policy that excludes liability for injuries arising out of the ownership, operation and use of an automobile provides coverage for a claim of negligent entrustment of an automobile.

## II.

The court of appeals, relying on *United Fire and Casualty Co. v. Day*, 657 P.2d 981 (Colo.App.1982), held that the coverage and exclusionary provisions of the Northern general liability policy were ambiguous in the context of a claim for negligent entrustment of an automobile, and construed the automobile exclusion as not barring recovery by Ekstrom on her claim of negligent entrustment.

In *Day*, the court of appeals held that a homeowner's liability policy did not exclude a claim based on negligent entrustment of an automobile. The policy in *Day* excluded liability for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of ... any motor vehicle owned or operated by, or rented or loaned to any insured." In finding that the automobile exclusion clause in *Day* was ambiguous in the context of a claim for negligent entrustment of an automobile, the court of appeals concluded that liability for negligent entrustment arises out of the personal conduct of the insured, and that the personal conduct did not involve the use of an automobile. *Id.* at 983. The court found that the automobile exclusion did not precisely exclude claims based on personal conduct of the

**2.** Northern specifically addresses only Ekstrom's claim for negligent entrustment of an automobile. Ekstrom's other negligence claims, those for hiring, supervising and retaining, will be treated, for the purposes of this opinion, as falling within the general category of negligent entrustment since each claim involved Hobbie's

use of an automobile. *See Lahey v. Benjuo,* 759 P.2d 855 (Colo.App.1988) (overlap between negligent entrustment and negligent supervision in context of parent-child relationship; gist of both claims is knowledge of potential harm to others and ability to control).

insured that existed separately from the use of the automobile and, accordingly, held that the claim based on negligent entrustment of an automobile was not excluded from coverage under the homeowner's liability policy. *Id.* at 984.

## III.

Coverage of Ekstrom's claims under Mallow's automobile liability policy is not at issue here. The automobile insurer's liability was extinguished when it deposited the automobile policy limit along with interest into the registry of the court. The issue is whether a claim of negligent entrustment of an automobile is excluded by the terms of the comprehensive general liability and special multi-peril liability coverage provisions. The policy specifically excludes liability for injury arising out of the ownership, operation and use of an automobile.

■ Unless there is an ambiguity in the terms of a policy, a court should avoid strained interpretations and enforce an insurance contract as written. *Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 232 (Colo. 1988). A court may not rewrite an unambiguous contract. *Urtado v. Allstate Ins. Co.*, 187 Colo. 24, 26, 528 P.2d 222, 223 (1974). Ambiguous policy language is construed in favor of the insured, *Coxen v. Western Empire Life Ins. Co.*, 168 Colo. 444, 448, 452 P.2d 16, 18 (1969), but the terms of a policy must be given effect according to their ordinary meaning in the absence of ambiguity, *In re Estate of Daigle*, 634 P.2d 71, 79 (Colo.1981). A provision in a policy is ambiguous when it is reasonably susceptible to more than one meaning. *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 695 (10th Cir. 1981).

■ Ekstrom's claim of ambiguity centers on the language "arising out of the ownership, maintenance, operation, use, loading or unloading of" an automobile. "Arising" is defined as originating from a specified source. *Webster's Third New International Dictionary* 117 (1986). We have defined "arising out of" to mean "originate from," "grow out of" or "flow from." *Azar v. Employers Cas. Co.*, 178

Colo. 58, 61, 495 P.2d 554, 555 (1972). In the context of the issue of whether a particular loss comes within a policy coverage provision, "arising out of" has been construed to bar coverage where, *but for* the covered cause of loss, the injury would not have occurred. *Titan Constr. Co. v. Nolf*, 183 Colo. 188, 194, 515 P.2d 1123, 1126 (1973). We see no reason to give "arising out of" a different meaning in the context of a policy exclusion. *See Cooter v. State Farm Fire & Cas. Co.*, 344 So.2d 496 (Ala. 1977) (but for the negligent use of the automobile, no liability would result to the entrustor).

■ Since one element of a negligent entrustment claim must be the negligent use of an automobile, a claim for negligent entrustment of an automobile inextricably derives from or relates to the use, ownership or operation of an automobile, and the automobile exclusion is therefore unambiguous in this context. *E.g., Barnstable County Mutual Fire Ins. Co. v. Lally*, 374 Mass. 602, 605, 373 N.E.2d 966, 969 (1978). The exclusion applies to a specific instrumentality, namely an automobile, rather than a theory of recovery. *Rubins Contractors, Inc. v. Lumbermens Mutual Ins. Co.*, 821 F.2d 671, 677 (D.C.Cir.1987). All of Ekstrom's claims are related to and flow from the ownership, operation or use of an automobile. Applying the automobile exclusion according to its ordinary meaning, Ekstrom's claims are not covered by the Northern policy.

■ Ekstrom argues that there are two causes of her injuries, the negligent operation of the truck by Hobbie and the negligent entrustment of the automobile by Mallow. Relying on *Day*, Ekstrom contends that Mallow's negligence is a separate and independent cause of her injuries, one that is covered by the Northern policy. Where multiple causes of injury are alleged, a claim is barred by the automobile exclusion unless it arises from non-automobile related conduct and is independent of any ownership, operation, or use of an automobile. *Allstate Ins. Co. v. Jones*, 139 Cal.App.3d

276–77, 188 Cal.Rptr. 557, 561 (1983). Appleman's treatise on insurance states:

Where the coverage of a risk is reasonably contemplated by the parties and such risk is independent of the "ownership, maintenance, operation, use, loading or unloading" of a motor vehicle within the meaning of an exclusion clause of a homeowner's policy, the risk will be covered under the policy even if the injury also arises out of the ownership, maintenance, etc. of the vehicle; however, the liability must also arise from nonvehicular conduct and must exist independently of the use or ownership of a vehicle.

7A J. Appleman, *Insurance Law and Practice* § 4500 (W. Berdal ed. 1979) (footnotes omitted). However, a claim for negligent entrustment does not exist independently of the ownership, operation or use of an automobile. *Compare Cesarini v. American Druggist Ins. Co.,* 463 So.2d 451 (Fla.App.1985) (negligent hiring and supervision of mechanic involved in bus accident excluded from coverage under comprehensive general liability policy) *with School Bd. v. Surette,* 394 So.2d 147 (Fla.App.1981) (liability for death of child allegedly caused by negligent selection, designation, location and maintenance of bus stop covered by comprehensive general liability policy).

Policies are "dovetailed" in the insurance business. "Dovetail" means "to fit together into a coordinated and unified whole." *Webster's Third New International Dictionary* 681. The practice of excluding automobile liability from coverage under a comprehensive liability policy and issuing a separate automobile liability policy is relevant to the issue of whether the automobile exclusion is ambiguous.

Liability insurance is generally written for a specific hazard in order to enable the underwriter to calculate premiums on some equitable as well as predictable basis. As a result, the hazard to be covered under each policy is carefully defined and other hazards are excluded. Thus, an automobile policy will, generally, exclude manufacturing and other business activities whereas a general liability policy provides protection only for the specific hazard for which premiums have been paid. All others are excluded, and unless the automobile hazard is included within a general liability policy, use of automobiles is excluded, or only covered within a narrow limit such as on premises.

7A J. Appleman, *supra* § 4500.04. The coverage under the automobile policy is thus "dovetailed" into the exclusion under the comprehensive policy to provide for uniform, non-duplicative liability coverage. The coverage provision in an automobile liability policy and an exclusionary clause in a general liability policy should therefore be construed the same. *Farmers Fire Ins. Co. v. Kingsbury,* 118 Misc.2d 735, 736, 461 N.Y.S.2d 226, 227 (Sup.Ct.1983). Here, Mallow purchased an automobile liability policy from Maryland and a general liability policy from Northern. Construing the automobile exclusion in the Northern policy together with the automobile liability policy issued by Maryland, the general liability policy unambiguously excludes claims for negligent entrustment of an automobile. *See Pedersen v. Republic Ins. Co.,* 72 Md. App. 661, 532 A.2d 183 (1987); *Westchester Fire Ins. Co. v. Continental Ins. Co.,* 126 N.J.Super. 29, 312 A.2d 664 (App.Div.1973) (language of coverage provision and exclusionary clause mutually exclusive).

### IV.

In our view, the exclusionary language "arising out of the ownership, maintenance, operation, use, loading or unloading" of an automobile is not ambiguous in the context of a claim for negligent entrustment, and, construing the clause according to its ordinary meaning, excludes such a claim from coverage. The court of appeals in *United Fire and Casualty Co. v. Day,* 657 P.2d 981, found that all but identical language in a homeowner's liability policy was ambiguous and did not bar a claim for negligent entrustment of an automobile.[3] The court of appeals based its

---

**3.** When *Day* was decided, there was a fairly even split of authority among the courts that had been confronted with this issue. Since then, however, the large majority of courts have

decision in this case on *Day*, which was decided before the authority was announced which compels a different result. Therefore, we overrule *Day*. Since Northern is not liable under the insurance policy, the issue of whether Ekstrom is entitled to interest on the entire judgment outstanding against Northern's insured is moot and Ekstrom's cross-petition for certiorari is dismissed. Accordingly, we reverse and return this case to the court of appeals with directions to remand to the district court with instructions to vacate the judgment for Ekstrom and to enter judgment for Northern.

found that claims based on negligent entrustment of an automobile are barred by the auto-

mobile exclusion that contains the "arising out of" language.