RAFAEL MARÍN, CARMEN MILAGROS SOTOMAYOR y OTROS, demandantes y recurrentes, *v.* AMERICAN INTERNATIONAL INSURANCE CO. OF P.R., demandada y recurrida.

*Número:* RE-94-192     *Resuelto:* 28 de octubre de 1994

*Alvaro R. Calderón, Jr.* y *Gladys E. Guemárez*, abogados de la parte recurrente; *Carlos Martínez Texidor*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Nos toca interpretar, por primera vez, el significado de una cláusula de exclusión de responsabilidad que, de ordinario, aparece en las pólizas de seguros de los propietarios de residencias (*homeowner's policy*).

I

El 1ro de marzo de 1992, Walter Ortiz, de 16 años de edad, conducía un vehículo de motor, marca Ford Pick-Up modelo 1983, que pertenecía a sus padres. Arrastraba, mediante un remolque, una embarcación de vela del tipo catamarán, de su propiedad. Ortiz iba acompañado de sus amigos Rafael Marín Sotomayor y Tomás Pérez Silva, también menores de edad. Estos jóvenes se disponían a pasar el día en la playa de Guánica conocida como "Isla de Gilligan".

Al llegar a esa playa, colocaron el catamarán en el agua mediante una rampa facilitada por Mario Morciglio, que hacía negocios bajo el nombre de San Jacinto Sea Food Restaurant. Más tarde, debido a problemas mecánicos, los jóvenes decidieron sacar el catamarán del agua. Al llegar a la rampa y disponerse a mover la embarcación mediante el remolque, los jóvenes notaron que había mucha gente esperando para usar la rampa. Por ello, en vez de bajar el mástil del bote en ese lugar, como era lo usual, Ortiz decidió halar el catamarán tal como estaba, mediante el vehículo de motor y el remolque, hasta el área de estacionamiento, para allí terminar toda la operación. En el camino hacia el área de estacionamiento, el mástil del catamarán hizo contacto con los alambres de alta tensión de la Autoridad de Energía Eléctrica, que discurrían a través de dicha área a una distancia aproximada de 160 pies de la rampa. Por tal razón, hubo una explosión, por lo que una descarga eléctrica pasó a través del mástil y le causó daños a Pérez y a Marín, quienes iban dentro del catamarán.

Con base en estos hechos, el 26 de octubre de 1992 los padres de Marín, por ellos y en representación de éste, presentaron una demanda de daños y perjuicios contra American International Insurance Co. (en adelante American), Mario Morciglio h/n/c San Jacinto Sea Food Restaurant, Rafael Mercado, Seguros Triple S, la Autoridad de Energía

Eléctrica y el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.). American es una compañía de seguros que, para las fechas alegadas en la demanda, había expedido y tenía en vigor una póliza de seguros para cubrir la responsabilidad de los padres del menor Walter Ortiz. Dicha compañía contestó la demanda y alegó que, según los términos de la póliza de su representado, no tenía responsabilidad por los hechos de este caso. Los otros demandados también contestaron y negaron responsabilidad.

Tras varios incidentes procesales, American presentó una moción de sentencia sumaria en la que alegó que, de acuerdo con las "exclusiones" de su póliza de seguros, la demanda en su contra debía desestimarse. La parte demandante se opuso así como también el E.L.A. El tribunal de instancia declaró sin lugar la moción de sentencia sumaria de American mediante Resolución de 9 de agosto de 1993. Resolvió que una de las "exclusiones" de la póliza disponía que la embarcación debería medir 26 pies o menos, hecho que no había sido acreditado, y que podía ser pertinente para determinar si este accidente estaba cubierto por dicha póliza. American solicitó una reconsideración de dicha decisión el 23 de septiembre de 1993.(¹) Luego de varios incidentes procesales, el 4 de abril de 1994 el tribunal finalmente examinó la aludida solicitud de reconsideración. Dictó una sentencia parcial enmendada, mediante la cual dejó sin efecto su resolución anterior. Declaró con lugar la moción de sentencia sumaria de American. Desestimó la demanda en cuanto a ésta, porque el accidente no estaba cubierto por la póliza en cuestión. Según el tribunal, otra de las cláusulas de exclusión, la

---

(¹) La parte recurrente alega que no había sido notificada de la Resolución de 9 de agosto de 1993 y que se enteró de ello mediante una conversación telefónica con el abogado de la parte demandante. Por ello, el 25 de agosto de 1993 presentó una moción para solicitar que ésta se le notificara. Alegó que el 8 de septiembre de 1993 el tribunal dictó una orden mediante la cual mandó que se le notificara la Orden de 9 de agosto de 1993 a la parte recurrente. Dicha orden se le notificó el 13 de septiembre de 1993.

1(e), relevaba a American de responsabilidad en casos como el de autos.

Inconforme, la parte demandante presentó un recurso de revisión ante nos. Alegó la comisión de tres errores:

> Erró el Honorable Tribunal de Instancia al desestimar la demanda, cuando determinó que era de aplicación al caso de autos la exclusión 1–E [sic] de la póliza expedida por American, y concluyendo que la misma no ofrecía cubierta por los hechos alegados en la demanda.
>
> Erró el Honorable Tribunal al no dictar sentencia sumaria a favor de la parte demandante y resolver que la póliza expedida por la American International Insurance Company ofrecía cubierta por los hechos alegados en esta demanda.
>
> En la alternativa erró el Honorable Tribunal de Instancia al no concluir que existía una controversia de hechos materiales que impedían [sic] que se dictara sentencia sumaria a favor de la parte demandada.

El 24 de mayo de 1994, concedimos treinta días a la parte recurrida para que mostrara causa por la cual no debíamos expedir el auto y revocar la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de Ponce. La parte recurrida compareció. Procedemos a resolver.

En síntesis, la controversia de autos se limita a determinar si el tribunal de instancia actuó correctamente al resolver que procedía la desestimación de la causa de acción de Marín contra American mediante sentencia sumaria, debido a la aplicación en este caso de la cláusula de exclusión 1(e) de la póliza de seguros.

## II

■ Discutiremos primero el señalamiento de error de naturaleza procesal. En *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986), señalamos que la sentencia sumaria tiene como propósito aligerar la tramitación de un caso, pues permite que se dicte la sentencia sin necesidad de que se tenga que celebrar la vista en los méritos, cuando surge de los documentos no controvertidos

que se acompañan con la solicitud que "no existe una legítima disputa de hecho a ser dirimida ... sólo resta aplicar el derecho", *Roth v. Lugo*, 87 D.P.R. 386, 392 (1963); *Despiáu v. Pérez*, 76 D.P.R. 123 (1954), y que "no se ponen en peligro o se lesionan los intereses de las partes", *Philip Morris, Inc. v. Tribunal Superior*, 103 D.P.R. 207, 216 (1975).

En el caso de autos, la parte recurrente alega que no procedía que se dictara la sentencia sumaria, debido a la existencia de una controversia sobre la longitud de la embarcación donde ocurrió el accidente. No tiene razón. Aunque la longitud de la embarcación es pertinente a los efectos de determinar si aplica o no la exclusión 1(f)(3) de la póliza —relacionada con el uso de embarcaciones— ello no es pertinente al recurso ante nos. La determinación del tribunal de instancia para desestimar la acción contra American se fundamentó únicamente en lo dispuesto en la cláusula de exclusión 1(e), que está relacionada con el uso de vehículos de motor, cuya aplicación a este caso no depende de la longitud de la embarcación. Además, en la moción de reconsideración la parte recurrida aceptó que se tomase en consideración para los efectos del pleito que la embarcación donde ocurrió el accidente medía menos de veintiséis (26) pies de eslora. Por lo tanto, sólo nos corresponde determinar, al considerar los restantes señalamientos de error, si fue correcta la interpretación del foro de instancia al aplicar la cláusula de exclusión 1(e) al accidente ocurrido. Si la interpretación fue correcta, procede entonces la sentencia sumaria.

## III

En relación con la interpretación de los contratos de seguros, hemos resuelto que el lenguaje usado en éstos debe ser interpretado —de ordinario— en su significado corriente y común, sin ceñirse demasiado al rigor gramatical, sino al uso general y popular de las voces. *Morales*

*Garay v. Roldán Coss*, 110 D.P.R. 701 (1981); *Pagán Caraballo v. Silva, Ortiz*, 122 D.P.R. 105 (1988). También hemos señalado que las cláusulas de exclusión han de interpretarse restrictivamente, de forma tal que se cumpla el propósito de la póliza de proveer protección al asegurado. Toda ambigüedad debe resolverse en favor del asegurado. *Pagán Caraballo v. Silva, Ortiz*, supra; *The London Assurance v. Tribunal Superior*, 95 D.P.R. 305 (1967); *Barreras v. Santana*, 87 D.P.R. 227 (1963). Tal norma, no obstante, no tiene el efecto de obligar a que se interprete, a favor del asegurado una cláusula que —con claridad y sin ambigüedad— le da la razón al asegurador en la controversia en cuestión. *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659 (1986). Si una cláusula de exclusión aplica claramente a determinada situación, la póliza, en general, no cubre los daños en cuestión, a pesar de las inferencias que parezcan surgir de las demás cláusulas. *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991).

La póliza de seguro de propietarios de residencias (*homeowner's policy*) se define en 1 *Couch on Insurance 2d* Sec. 1:61, págs. 152–153 (Ed. rev. 1984) como sigue:

> This type of insurance is, in reality, a package policy with a combination of coverages. The policy typically covers the home (building) and its appurtenant structures from a variety of perils, such as fire, windstorm, vandalism and malicious mischief. The insureds' personal property is likewise covered from a variety of perils including fire and theft. The policy also provides liability coverage for the insureds' liability arising out of the covered premises.

No obstante la amplia protección que ofrecen dichas pólizas, una serie de eventos quedan al descubierto. Una de esas situaciones es la que aparece en la cláusula de exclusión 1(e) del contrato de seguro ante nuestra consideración, cuyo texto se expone a continuación:

> 1. Cubierta E —Responsabilidad personal y Cubierta F— Pagos médicos a otros no se aplican a una lesión corporal o daño a

la propiedad:

.    .    .    .    .    .    .    .    .

 e. resultantes de:

 (1) la posesión, mantenimiento, uso, carga o descarga de vehículos de motor o de cualesquiera otros artefactos motorizados terrestres, incluyendo remolques, poseídos u operados por, o alquilados o dados en préstamo a, un asegurado;

 (2) la cesión por un asegurado de un vehículo de *motor* o cualquier otro artefacto motorizado terrestre a cualquier persona; o

 (3) una responsabilidad paternal indirecta, impuesta estatutariamente, por las acciones de un niño o menor de edad que utilice uno de los artefactos excluidos en los párrafos (1) o (2) arriba.

El significado de esta cláusula de exclusión es perfectamente claro, según surge de su texto y de su historial. En palabras sencillas y precisas, la cláusula establece que no hay responsabilidad del asegurador cuando el daño es causado mediante el uso de vehículos de motor, lo que incluye *remolques.* De sus propios términos queda explícitamente manifiesto el sentido de la cláusula de exclusión en cuestión.

Más aún, el historial de la cláusula es cónsono con su sentido literal. El alcance y sentido de la cláusula citada es harto conocido en el mundo de los seguros. El lenguaje de esta exclusión, que aparece con frecuencia en las pólizas de propietarios de residencias (*homeowner's policy*), también aparece de ordinario, en las pólizas de seguro de automóviles. Ambos tipos de póliza utilizan la misma frase, aunque con efectos diametralmente distintos, debido a que las pólizas de los automóviles cubren eventos que en la primera se excluyen. Por este motivo, se ha resuelto con frecuencia que cuando dichas cláusulas posean un lenguaje similar, ambas deberán tener el mismo significado, para evitar así la posibilidad de que algún evento o accidente quede excluido de ambos tipos de pólizas. *United Services Auto. Ass'n v. Aetna C. & S. Co.*, 429 N.Y.S.2d 508 (1980); *Farmers Fire Ins. Co. v. Kinsbury*, 461 N.Y.S.2d 226 (1983);

*Northern Ins. Co. of New York v. Ekstrom*, 784 P.2d 320 (Colo. 1989).

■ Generalmente, la frase "daños resultantes de la posesión, uso, mantenimiento, etc., de un vehículo de motor" significa que debe existir una relación causal entre el daño sufrido y el uso del vehículo para propósitos de transportación, puesto que no todo daño que ocurra en o cerca de un vehículo de motor está incluido en el sentido jurídico de la frase anterior. *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917 (1983); *Tlouglan v. Auto-Owners Ins. Co.*, 310 N.W.2d 116 (1981); *Aetna Cas. & Sur. v. State Farm Mut. Auto. Ins.*, 380 A.2d 1385 (1977); *Associated Ind. Dealers v. Mut. Serv. Ins.*, 229 N.W.2d 516 (1975); *Hogle v. Hogle*, 356 A.2d 172 (1975); *American Modern Home Ins. Co. v. Rocha*, 729 P.2d 949 (Ariz. App. 1986); 7A *Appleman, Insurance Law and Practice* Sec. 4500, págs. 176–177 (1981).

■ La relación causal entre el uso o mantenimiento del vehículo de motor y los daños reclamados, pues, es lo que determina si la póliza cubre el daño reclamado o no. De existir una relación causal, la póliza de autómoviles cubre el accidente. Igualmente, de existir tal relación causal, la póliza de propietarios *no* cubre el accidente, porque puede invocarse la cláusula de exclusión de la póliza de propietarios de residencias (*homeowner's policy*). Ahora bien, si la responsabilidad emana de una conducta separada e independiente del uso o mantenimiento del vehículo de motor, entonces no aplicará la cláusula de exclusión de la póliza de propietarios y el asegurador estará obligado a indemnizar. *González v. St. Paul Mercury Insurance Company*, 131 Cal.Rptr. 626 (1976); *Garvey v. State Farm Fire and Cas. Co.*, 770 P.2d 704 (Cal. 1989); *Graham v. Public Employees Mut. Ins. Co.*, 656 P.2d 1077 (Wash. 1983); *Appleman*, supra, pág. 179.

# IV

En el caso de marras, los recurrentes alegan que el accidente ocurrió a causa del uso del catamarán y no del uso del vehículo de motor. No estamos de acuerdo. El accidente en este caso no ocurrió como resultado del uso de la embarcación como tal, puesto que ésta no tiene autopropulsión para moverse en tierra. Está diseñada para moverse en el agua, no así fuera de ella. La embarcación necesitaba ser remolcada por un vehículo de motor para moverla en tierra de un sitio a otro. El accidente ocurrió al usarse el vehículo de motor, puesto que éste era el que arrastraba el remolque donde descansaba la embarcación. Al halar la embarcación, mediante el uso del vehículo del motor, dicha embarcación salió del agua y pasó por debajo de los alambres de alta tensión. Al engancharse la embarcación al remolque y éste a su vez al vehículo de motor, dicho remolque, junto a la embarcación, se convirtieron en una sola unidad; es decir, en un solo vehículo de motor autopropulsado por razón de la fuerza de operación desarrollada en su parte delantera, a tenor con lo resuelto en *González v. Seatrain Lines of P.R.*, 106 D.P.R. 494 (1977).[2] Por ello, debemos concluir que el accidente ocurrió con motivo del uso de un vehículo de motor, eventualidad que claramente cae bajo la exclusión 1(e) de la póliza.

Es menester enfatizar que el resultado al que llegamos está compelido por la naturaleza de la póliza en cuestión. Los propósitos de este tipo de póliza y el esquema

---

[2] La parte recurrida alega que el caso *González v. Seatrain Lines of P.R.*, 106 D.P.R. 494 (1977), se distingue del caso de autos, debido a que el accidente del caso de marras no ocurrió en una vía pública, sino en una rampa cerca del mar. No tiene razón. Independientemente de si se puede considerar el área donde ocurrió el accidente como una vía pública o no, lo cierto es que estamos ante un póliza de propiedad, que específicamente excluye los daños corporales o daños a la propiedad causados mientras se está utilizando un vehículo de motor, irrespectivamente de si el vehículo de motor está transitando en una vía pública, en el patio de la casa del asegurado o en cualquier otro lugar. En este caso, el vehículo halaba el remolque sobre el cual descansaba la embarcación cuando, entonces, ocurrió el contacto del mástil con los alambres de alta tensión.

de protección que ofrece, a los que ya hemos aludido, no nos dejan otra alternativa. Resolver que el accidente ante nos está cubierto por una póliza de propietarios de residencias (*homeowner's policy*) desvirtuaría gravemente la conocida naturaleza de la póliza en cuestión, según se le conoce en la práctica comercial en el campo de los seguros. No tenemos la facultad para interpretar de esa manera dicho tipo de póliza. Además, debemos recordar lo que en otra ocasión señalamos en relación con los contratos de seguros, y que hoy citamos: "Ha de presumirse que las partes al contratar lo hacen con el propósito de que sus pactos y convenciones tengan efectividad y no para que resulten declaraciones baldías e ilusorias." *Morales Garay v. Roldán Coss*, supra, pág. 707.

## V

Los apelantes alegan, como fundamento adicional para imponerle responsabilidad a la compañía de seguros, el hecho de que ésta pagara $1,000 por la pérdida de la embarcación. No tienen razón. El hecho de que la compañía aseguradora pagara mil dólares a los asegurados por la pérdida de la embarcación, no significa que la aseguradora aceptó la responsabilidad total por el accidente en cuestión. Dicho pago procedía claramente a tenor con la Sec. I, Cláusula (C) inciso (3) de la póliza. Éste dispone que el asegurador pagará mil dólares por la pérdida de embarcaciones, incluyendo sus remolques, accesorios, equipos y motores fuera de borda. Lo que se asegura a través de esta Cláusula (C) es el objeto como tal, en este caso la embarcación. Así también, bajo esta cláusula se aseguran otros artículos, como billetes de banco, lingotes, valores, escrituras, etc. Lo que la póliza pretende es restituir el valor del objeto perdido.

Por este motivo el pago de esos mil dólares se realizó en cumplimiento de la obligación contractual de American de proveer una indemnización por la pérdida de ciertos objetos. Ello no puede considerarse como un acto de reconocimiento de responsabilidad de American por todo el accidente.

Por los fundamentos antes expuestos, *se expide el auto y se confirma la sentencia del tribunal de instancia que desestimó la demanda contra American.*

El Juez Asociado Señor Rebollo López no intervino.