Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| RUTH FEBRES MARTÍNEZ, OSCAR RODRÍGUEZ SOTO, SOCIEDAD LEGAL DE GANANCIALES FEBRES-RODRÍGUEZ Y OTROS<br><br>Demandante<br><br>v.<br><br>PADUIL TORRES MÉNDEZ Y OTROS<br><br>Demandada -Recurridos<br><br>MULTINATIONAL INSURANCE COMPANY<br><br>Peticionaria | KLCE202301447 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Caso núm.: AG2023CV00391 (602)<br><br>Sobre: Daños |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pagán Ocasio, el juez Marrero Guerrero y la jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 8 de febrero de 2024.

El Tribunal de Primera Instancia ("TPI") denegó desestimar, por la vía sumaria, una reclamación contra la aseguradora de un condominio por los daños que había sufrido un apartamento por causa de filtraciones de agua continuos. Por los fundamentos que expresamos a continuación, en el ejercicio de nuestra discreción denegamos expedir el auto de *certiorari* solicitado.

I.

El Condominio Crash Boat Apartments está sujeto al Régimen de Propiedad Horizontal. La Sra. Ruth Febres Martínez, el Sr. Oscar Rodríguez Soto y la Sociedad Legal de Gananciales (los Demandantes) son propietarios del apartamento 503 de dicho condominio. En marzo de 2023, los Demandantes presentaron la acción de referencia (la Demanda), contra el Sr. Paduil Torres

Número Identificador
RES2024_____

Méndez, la Sra. Anabelle Alemán Delgado y la Sociedad Legal de Gananciales (los Demandados). Se alegó en la Demanda que, en junio de 2020, el apartamento 503 del Condominio Crash Boat Apartments (el Condominio) comenzó a sufrir problemas de filtraciones de agua provenientes del apartamento 504 propiedad de los Demandados.

En julio de 2023, los Demandados presentaron una Demanda contra Tercero para traer al pleito a la Asociación de Titulares del Condominio (la Asociación) y a su compañía aseguradora Multinational Insurance Company (Multinational o la Aseguradora). Arguyeron que existe una póliza de seguros entre Multinational y la Asociación de Titulares del Condominio que cubre los daños reclamados en la Demanda.

En octubre de 2023, Multinational presentó una Moción de Sentencia Sumaria (la Moción). Solicitó la desestimación de la causa de acción en su contra ante la ausencia de una póliza de seguros que cubra los alegados hechos.

Los Demandados se opusieron mediante una Oposición a Solicitud de Sentencia Sumaria. Plantearon que, la Demanda contenía alegaciones de daños continuos, parte de las cuales tienen lugar durante la vigencia de la póliza de seguros suscrita por Multinational. Por ende, todo evento acontecido luego del 13 de julio de 2020, durante la vigencia de la póliza emitida por Multinational, debe ser considerado un daño continuado y está cubierto por dicha póliza.

Multinational replicó. Sostuvo que, la póliza de seguros excluye los daños ocurridos con anterioridad a la vigencia de la póliza, específicamente los daños continuos y aquellos conocidos por el asegurado previo a la vigencia de la póliza.

El 9 de noviembre de 2023, el TPI notificó una Resolución, mediante la cual denegó la Moción. El TPI determinó que los siguientes hechos no están en controversia:

1. La parte demandante expresa en el mes de junio de 2020 el apartamento 503 propiedad de los demandantes comenzó a sufrir constantes y continuas filtraciones de agua que comenzaron a salir por la roseta de la bombilla del techo de la cocina.

2. La póliza de Multinational tiene vigencia de 13 de julio de 2020 a 13 de julio de 2021, Póliza 88-CP-000331384-0.

3. Las filtraciones comenzaron en junio de 2020 y eran conocidas para cuando entró en vigor la póliza expedida.

4. Cuando se alega se comenzó a sufrir las filtraciones, Multinational no había emitido póliza alguna a favor de Asociación del Condominio Crash Boat Apartments.

Además, determinó que existían las siguientes controversias que debían ser dirimidas en el descubrimiento de prueba:

1. ¿Si procede la desestimación solicitada por Multinational por no existir póliza emitida al momento en que ocurren los alegados hechos?

2. ¿Si los actos y daños son de carácter continuo y por lo tanto constituyen una ocurrencia cubierta bajo póliza 88-CP-000331384-0?

3. ¿Si las alegaciones describen hechos que coloquen el daño dentro de la cubierta de la póliza?

Evaluadas las posturas de ambas partes, el TPI concluyó que la controversia no es susceptible de resolverse por la vía sumaria porque existe controversia sobre si los alegados daños a la propiedad son continuos y, por tanto, constituyen una ocurrencia cubierta baja la vigencia de la póliza.

El 24 de noviembre, Multinational presentó una moción de reconsideración, la cual fue denegada mediante una Resolución notificada el 27 de noviembre. Fundamentó su decisión en lo siguiente:

[...] Tribunal resuelve No Ha Lugar, basado no en la fecha en [sic.] entró en vigencia la póliza, y si nos

referimos a daños continuos. Nos parece debe haber un descubrimiento de prueba para poder adjudicar una solicitud de desestimación [...].

El 22 de diciembre, la Aseguradora presentó el recurso que nos ocupa, mediante el cual planteó la comisión de los siguientes errores:

1. Erró el Tribunal de Instancia en no desestimar la causa de acción contra Multinational Insurance Company a pesar de tener todos los elementos ante sí para poder hacerlo.

2. Erró el Tribunal de Primera Instancia en incluir en su Resolución la siguiente controversia "Si los actos y daños son de carácter continuo y por lo tanto constituyen una ocurrencia cubierta bajo la Póliza 88-CP-000331284-0".

Ordenamos a las partes recurridas mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la decisión recurrida. El 16 de enero, los Demandados comparecieron; plantearon que el caso no es susceptible de resolverse sumariamente ya que existe una controversia entre las partes sobre cuándo el asegurado tuvo conocimiento de los hechos alegados en la Demanda. Además, reiteraron lo planteado al TPI en su oposición a la sentencia sumaria. Los Demandantes no comparecieron. Resolvemos.

II.

A.

El recurso de *certiorari* es el vehículo procesal discrecional utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal de menor jerarquía. *IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009). Véase, además, Artículo 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491.

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los

asuntos que nos son planteados mediante el recurso de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que para ello debemos considerar. Éstos son:

   A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

   B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

   C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

   D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

   E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

   F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

   G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Véase *IG Builders et al.,* 185 DPR a las págs. 338-339.

Un *certiorari* sólo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. En otras palabras, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención. De no ser así, procede que nos abstengamos de expedir el auto solicitado, de manera que se continúen los procedimientos del caso sin mayor dilación en el Foro de Instancia. *Íd.*

B.

"[D]ebido a que la industria de los seguros está revestida del más alto interés público, es reg[lament]ada extensamente por el Estado". *Carpets & Rugs v. Tropical Reps*, 175 DPR 614, 632 (2009).

(Citas omitidas); véase, por ejemplo, 26 LPRA secs. 1-10377. El "negocio de seguros está investido de un alto interés público debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos". *Rivera Matos, et al. v. Triple-S et al.*, 204 DPR 1010, 1019 (2020); *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Natal Cruz v. Santiago Negrón et al.*, 188 DPR 564, 575 (2013). Este alto interés surge "de la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad". *RJ Reynolds, supra*; *SLG Francis-Acevedo v. SIMED*, 176 DPR 372 (2009).

Ahora bien, la relación entre un asegurado y su aseguradora se rige por lo pactado en el contrato de seguro, el que constituye la ley entre las partes. *Lopez v. Atlantic Southern Ins. Co.*, 158 DPR 562, 568 (2003). El contrato de seguro es el pacto mediante el cual "el asegurador se compromete, a cambio del pago de una prima, a indemnizar a un tercero, por lo general al asegurado o un reclamante, por una pérdida contingente al ocurrir un evento futuro incierto previsto". (Cita omitida). *Maderas Tratadas v. Sun Alliance, et al.*, 185 DPR 880, 896 (2012). La póliza es el documento escrito en el que se hacen constar los términos del contrato de seguro. *Íd.* Los contratos de seguros se interpretarán "a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado...". Art. 11.250, 26 LPRA sec. 1125 (2008); *Maderas Tratadas, supra*. Como regla general, los contratos de seguros se consideran contratos de adhesión y se interpretan liberalmente a favor del asegurado con el fin de que se sostenga la cubierta mediante una interpretación razonable. *López*, 158 DPR a la pág. 568.

Sin embargo, si los términos del contrato de seguros son específicos y no dan margen a diferentes interpretaciones, se hará valer la clara voluntad entre las partes. *Echandi Otero v. Stewart*

*Title*, 174 DPR 355, 370 (2008). Antes de que la indemnización produzca efecto, debe cotejarse si existe alguna cláusula de exclusión que disponga que el asegurador no responderá por determinado evento. *Monteagudo Pérez v. E.L.A.,* 172 DPR 12, 21 (2007). Este tipo de cláusulas se interpretará restrictivamente a favor de la persona asegurada. *Marín v. Internacional Ins. Co.,* 137 DPR 356, 362 (1994). No obstante, "si los términos de las cláusulas de exclusión son claros y aplican a una situación determinada, no podrá responsabilizarse a la aseguradora por aquellos riesgos expresamente exceptuados". *Rivera Matos,* 204 DPR a la pág. 1021.

Cabe señalar que, inicialmente, "corresponde al asegurado el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión". (Citas omitidas). *Íd.*

III.

Examinada la totalidad del expediente, y en el ejercicio de nuestra discreción bajo la Regla 40, *supra,* declinamos intervenir con la decisión recurrida. La determinación del TPI para denegar la Moción se basó en que al momento existen controversias respecto a la alegación de daños continuos y la cubierta de la póliza. La determinación es razonable y dicho foro no cometió error de derecho alguno. Tampoco la Aseguradora demostró que nuestra intervención sea necesaria para evitar algún fracaso de la justicia.

Resaltamos, que la forma CG 00 01 04 13 de la póliza expresamente dispone en la Sección I, inciso 3 que, si el asegurado o algún empleado autorizado conocía, previo a entrar en vigor la cubierta, que ocurrió el daño a la propiedad, entonces cualquier continuación o cambio durante o después del período de la póliza se

considerará como conocido con anterioridad a la vigencia de la póliza.

Sobre lo antedicho, existe controversia sobre si al momento de contratar la póliza, se le había notificado a la Asociación de las filtraciones de agua ocurridas en el apartamento 503. Tampoco se ha demostrado con certeza si la póliza que expidió la Aseguradora se podría activar o no por los daños continuados que se alegaron en la Demanda. Puntualizamos, además, que en el presente caso la Asociación no ha contestado la demanda contra tercero, por tanto, aún se desconoce cuándo tuvo conocimiento de los hechos expuestos en la reclamación. En consecuencia, el TPI actuó correctamente al negarse a desestimar la demanda en contra de la Aseguradora para que las partes realicen el descubrimiento de prueba que estimen pertinente. Finalizado el descubrimiento de prueba, el TPI estará en mejor posición para dirimir los planteamientos de las partes. Por tanto, no intervendremos con la decisión recurrida.

IV.

Por los fundamentos expuestos, se deniega expedir el auto solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones