Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LYNETTE RODRÍGUEZ FLORES<br><br>Recurrida | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
| V. | KLCE202401061 | Caso Núm.: SJ2022CV06959 |
| COOPERATIVA DE SEGUROS MÚLTIPLES<br><br>Peticionaria | | Sobre:<br>Ley de Acción de Clase del Consumidor, incumplimiento de contrato de seguros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, Juez Marrero Guerrero y Juez Campos Pérez.

Marrero Guerrero, Juez Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de noviembre de 2024.

Comparece ante nos la Cooperativa de Seguros Múltiples de Puerto Rico (Seguros Múltiples) en solicitud de que revisemos una *Resolución* emitida y notificada el 30 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Por virtud del referido dictamen, el TPI declaró No Ha Lugar a la solicitud de sentencia sumaria de Seguros Múltiples, sin realizar una determinación sobre la legalidad del descuento por concepto de depreciación de las piezas del automóvil de la señora Lynette Rodríguez Flores (señora Rodríguez Flores) en una reclamación de pérdida parcial.

Por los fundamentos que expondremos a continuación, se adelanta la denegación de la expedición del auto de *certiorari.*

Veamos el trasfondo fáctico y procesal atinente a este recurso.

---

[1] Apéndice de *Certiorari Civil*, Anejo 1, págs. 1-18. El 15 de mayo de 2024, Seguros Múltiples presentó una *Moción de Reconsideración y de Enmiendas o Determinaciones Adicionales*, la cual el TPI declaró No Ha Lugar mediante una *Resolución* del 30 de agosto de 2024.

**I.**

El caso ante nuestra consideración tuvo su origen el 4 de agosto de 2022, fecha en que la señora Rodríguez Flores, individualmente y en nombre de todos los demás situados de manera similar, instó una *Demanda de Clase* contra Seguros Múltiples por la *Ley de Acción de Clase del Consumidor*, Ley Núm. 118 del 25 de julio de 1971. 32 LPRA sec. 3341 *et seq.* y violación del contrato.[2] Mediante esta, alegó que era dueña de un vehículo BMW del año 2021 que estaba asegurado con una póliza de seguro de automóvil emitida por Seguros Múltiples que estaba vigente para septiembre de 2021, momento en que la señora Rodríguez Flores estuvo envuelta en un accidente automovilístico. Arguyó que Seguros Múltiples determinó que el accidente constituyó una pérdida cubierta bajo su póliza de seguros y eligió pagar la cantidad necesaria para reparar el vehículo. Sin embargo, esgrimió que Seguros Múltiples no pagó dicha cantidad necesaria para reparar su vehículo a tenor con el estimado provisto para sufragar las luces combinadas derecha e izquierda y el regulador de presión del sistema de combustible. Según la señora Rodríguez Flores, dichos componentes no depreciaron en función de la edad o el uso del vehículo y su sustitución no dio lugar a una mejora en la condición que se encontraba el vehículo antes del accidente. Sin embargo, planteó que Seguros Múltiples estimó que el costo de las piezas de repuesto era $4,544.07, del cual le aplicó un 25% de descuento, más una deducción de 20% ($681.61) por depreciación de dichas piezas basado en la antigüedad o el millaje del vehículo. Puntualizó que Seguros Múltiples estimó la reparación en $5,131.57, pero con la deducción del deducible de $250 y los $681.61 de la depreciación, el pago final se redujo a $4,199.96. Por ello, la señora

---

[2] Entrada Núm. 1 en el expediente digital del caso SJ2022CV06959 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Rodríguez Flores alegó que Seguros Múltiples no le pagó la cantidad que estaba contractualmente obligada a pagarle para la reparación de su vehículo. De acuerdo con la señora Rodríguez Flores, en la póliza no se identifica una pieza del vehículo a la que Seguros Múltiple tenga derecho a aplicar una reducción por depreciación al pagar por la reparación o el reemplazo de la propiedad dañada. Asimismo, manifestó que la póliza no identifica pieza alguna del vehículo para la cual el reemplazo de piezas usadas con piezas nuevas constituye una mejora de clase o calidad. Por lo anterior, la señora Rodríguez Flores reclamó que Seguros Múltiples debía otorgar a los miembros de la clase la cantidad no desembolsada por concepto de depreciación, así como los intereses devengados sobre dicho monto desde la fecha de vencimiento de cada reclamación.

Tras varios trámites procesales, el 25 de agosto de 2023, Seguros Múltiples presentó una *Moción de Sentencia Sumaria.*[3] En esta, solicitó la desestimación de la Demanda, toda vez que entendió que la señora Rodríguez Flores carecía de una causa de acción que justificara la concesión de un remedio por la doctrina de pago en finiquito. A saber, Seguros Múltiples manifestó que realizó una oferta de pago y la señora Rodríguez Flores la aceptó. Además, apuntó que la depreciación es una práctica válida, conforme al contrato de seguro, la ley y la reglamentación aplicable. Asimismo, solicitó que previo de considerar la controversia sobre la certificación de la clase de todos los asegurados que se les aplicó la depreciación al ajustar las reclamaciones bajo las pólizas de automóvil, el TPI atendiera la validez sustantiva de la práctica de la depreciación. Sobre el particular, Seguros Múltiples adujo que el TPI le debía dar deferencia a unas determinaciones de la Oficina del Comisionado de Seguros (OCS), en las que validó la corrección de la aplicación de la depreciación a piezas de vehículos por daños

---

[3] Apéndice de *Certiorari Civil*, Anejo 7, págs. 179-249.

ocasionados por una colisión. Seguros Múltiples especificó que los únicos asuntos que estaban en controversia eran si era legal depreciar las piezas de un automóvil como parte del ajuste realizado por la aseguradora para pagar por la reparación del vehículo.

Posteriormente, el 7 de noviembre de 2023, la señora Rodríguez Flores presentó una *Oposición a Moción solicitando Sentencia Sumaria*.[4] Mediante esta, expuso que Seguros Múltiples se valió de unas cartas de la OCS que validaron las deducciones de las depreciaciones de las piezas de los automóviles no eran determinaciones administrativas que merecieran deferencia judicial ni eran un precedente vinculante. Por otro lado, con respecto al argumento de pago en finiquito, la señora Rodríguez Flores precisó que Seguros Múltiples no demostró buena fe para aplicar las deducciones por depreciación en reclamaciones de pérdida parcial en la medida que no era un descuento legítimo bajo la póliza, por lo que entiende que incurrió en una práctica desleal prohibida por el Código de Seguros, 26 LPRA sec. 2716a. Además, indicó que la oferta de pago de Seguros Múltiples era parte de sus obligaciones legales. Asimismo, señaló que Seguros Múltiples no estableció que existió una disputa *bona fide* sobre si la Cooperativa podía automáticamente aplicar una deducción uniforme por depreciación, más que la oferta de pago no se transmitió claramente la intención de resolver el reclamo por los $681.61 deducidos del costo de las piezas de su automóvil por concepto de depreciación del vehículo. Adicionalmente, la señora Rodríguez Flores destacó que, pese a que se puede adjudicar una controversia sustantiva previo a la certificación de una clase, no procedía al momento, en vista de que aún estaba en curso el descubrimiento de prueba.

---

[4] *Íd.*, Anejo 10, págs. 662-749.

El 6 de diciembre de 2023, el TPI celebró una vista argumentativa para escuchar los argumentos de ambas partes referente a la solicitud de sentencia sumaria.[5]

Sometido el asunto ante su consideración, el 30 de abril de 2024, el TPI emitió y notificó una *Resolución* en la que declaró No Ha Lugar a la solicitud de sentencia sumaria de Seguros Múltiples.[6] El Foro *a quo* aclaró que su dictamen no constituyó una adjudicación sobre la legalidad o no del descuento por la alegada depreciación que Seguros Múltiples le aplicó a la reclamación de la señora Rodríguez Flores. Por otro lado, determinó que no existía controversias sobre los siguientes hechos:

1. El 7 de octubre de 2020, la Cooperativa de Seguros Múltiples ("CSM") emitió a la demandante Lynette Rodríguez Flores la póliza número Póliza PAP-4369650, el cual es una póliza de seguro de automóvil a la demandante que cubría daños al automóvil en caso de pérdida.
2. La póliza PAP-4369650 estuvo vigente del 7 de octubre de 2020 al 7 de octubre de 2021.
3. La póliza PAP-4369650[,] vigente del 7 de octubre de 2020 al 7 de octubre de 2021[,] cubría un vehículo de motor, marca BMW, modelo X1, del año 2014, número de identificación WBAVM1C53EVW53324 (en adelante "vehículo asegurado").
4. La póliza PAP-4369650[,] vigente del 7 de octubre de 2020 al 7 de octubre de 2021[,] establece un deducible de $250.00.
5. La póliza PAP-4369650[,] vigente del 7 de octubre de 2020 al 7 de octubre de 2021[,] contiene una Parte D que provee "Cubierta de Daños al Automóvil de Usted"; dicha Parte D contiene una cláusula titulada "Límite de Responsabilidad", el cual reza:

   **LÍMITE DE RESPONSABILIDAD**
   A. Nuestro límite de responsabilidad en caso de pérdida será la menor de:
      1. El valor real en efectivo de la propiedad robada o dañada; o
      2. La cantidad necesaria para reparar o reemplazar la propiedad con otra de clase y calidad similar.
      No obstante, el límite máximo que pagaremos en caso de pérdida a:
      1. Cualquier "automóvil no poseído" que sea un "remolque" será $500.00.
      2. Equipo diseñado exclusivamente para la reproducción de sonido y cualesquiera accesorios usados con tal equipo instalado en lugares no utilizados por el fabricante del automóvil para la instalación de tales equipos y accesorios será $1,000.00.

---

[5] *Íd.*, Anejo 1, págs. 1-2.
[6] *Íd.*, págs. 1-18.

   B. Se efectuará un ajuste por depreciación y condición física para determinar el valor real en efectivo en caso de una pérdida total.

   C. Si una reparación o un reemplazo resultara mejor que de clase y calidad simular, nosotros no pagaremos por la cantidad de la mejora.

6. Si bien la póliza PAP-4369650 indica que en caso de una pérdida total se aplicará un ajuste por depreciación y condición física del vehículo, la póliza no dispone, en lugar alguno, que se aplicará un ajuste por depreciación y condición física del vehículo en caso de una pérdida parcial.

7. El 26 de septiembre de 2021, mientras la demandante Lynette Rodríguez Flores conducía un auto marca Acura, modelo 3.2TL, del año 2003, le ocasionó daños al vehículo asegurado que al momento del accidente era conducido por Richard L. [Dunnam] Méndez, esposo del demandante.

8. El 4 de octubre de 2021, la demandante Lynette Rodríguez Flores sometió una reclamación a tenor con la póliza por los daños sufridos por el vehículo motor marca BMW.

9. CSM le asignó el número 079710068 a la reclamación sometida por la demandante Lynette Rodríguez Flores el 4 de octubre de 2021.

10. CSM determinó que los daños sufridos por el automóvil de la demandante Lynette Rodríguez Flores estaban cubiertos bajo la póliza emitida por CSM, y CSM optó por cumplir con su acuerdo contractual de pagar la pérdida pagando por el costo de la reparación.

11. La selección de CSM de cumplir con su acuerdo contractual de pagar la pérdida por el costo de la reparación del auto de la demandante significa que CSM determinó que la reclamación 079710068 sometida por la demandante Lynette Rodríguez Flores era por una "pérdida parcial", y no por una "pérdida total".

12. El 11 de noviembre de 2021, la Sra. Ana M. Bauzá Rosas, Ajustadora de Oficina de CSM, le cursó a la demandante Lynette Rodríguez Flores un desglose de pagos totales que señalaba que CSM había calculado el costo de las piezas necesarias para reparar el auto en $4,544.07. La demandante Lynette Rodríguez Flores no disputa este cálculo de CSM.

13. Al costo calculado [de] las piezas necesarias para reparar el auto de la demandante Lynette Rodríguez Flores, CSM le aplicó un "descuento" de 25%. La procedencia o no de este "descuento" no es objeto de este pleito.

14. El Desglose de Pagos Totales que le cursó la Sra. Lynette Rodríguez Flores el 11 de noviembre de 2021, además refleja que del costo neto de piezas necesarias para reparar el vehículo (el costo original menos el "descuento" de 25%), [CSM] además restó un 30% por "depreciación" de $1,022.42.

15. El Desglose de Pagos Totales que le cursó la Sra. Ana M. Bauzá Rosas, Ajustadora de Oficina de CSM, a la demandante Lynette Rodríguez Flores el 11 de noviembre de 2021[,] no explica [por qué] se aplicó un descuento por "depreciación".

16. El Desglose de Pagos Totales que le cursó la Sra. Ana M. Bauzá Rosas, Ajustadora de Oficina de CSM, a la demandante Lynette Rodríguez Flores el 11 de noviembre de 2021[,] no explica cómo se computó el referido 30% de "depreciación".

17. El Expediente de Reclamación que presentó CSM no refleja cómo se computó el referido 30% de "depreciación".

18. El Expediente de Reclamación que presentó CSM no refleja porqué las piezas a ser reemplazadas ameritaban un descuento por "depreciación" de un 30%.

19. Conforme el Desglose de Pagos Totales que le cursó la Sra. Ana M. Bauzá Rosas a la demandante Lynette Rodríguez Flores [el] 11 de noviembre de 2021, el pago ofrecido por CSM, luego de restar el "descuento", la depreciación y el deducible, ascendía a $3,859.15.

20. El 12 de noviembre de 2022, el Sr. Richard L. Dunnam, esposo de la demandante Lynette Rodríguez Flores, le escribió a la Sra. Dunnam indicándole que el ajuste realizado por CSM era incorrecto pues no se debió restar suma alguna por "depreciación" sino que CSM debía pagar $4,881.57.

21. El 12 de noviembre de 2021, la ajustadora Ana M. Bauzá le escribió a Idaris N. Rivera de Jesús de CSM, compartiendo la contestación del Sr. Dunnam; la Sra. Rivera de Jesús le contestó por correo electrónico a la Sra. Bauzá el 18 de noviembre de 2021[,] informando que "se autoriza reducir hasta un 20%".

22. La comunicación de la Sra. Rivera de Jesús a la Sra. Bauzá del 18 de noviembre de 2023 no explica cómo CSM computó el 20% que la Sra. De Jesús autorizó en su correo electrónico.

23. El 24 de noviembre de 2021, la Sra. Ana Guzmán le cursó a la demandante Lynette Rodríguez Flores un correo electrónico a la cual anejó un nuevo Desglose de Pagos Totales donde cambió la "depreciación" previa de 30% a ser restada a un 20%, equivalente a $681.61.

24. Conforme al Desglose de Pagos Totales revisado que le cursó la Sra. Ana M. Bauzá Rosas a la demandante Lynette Rodríguez Flores [el] 24 de noviembre de 2021, el pago ofrecido por CSM, luego de restar el "descuento", la depreciación y el deducible, ascendía a $4,199.96.

25. El correo electrónico que le cursó la Sra. Ana Guzmán a la demandante Lynette Rodríguez Flores además tenía anejado una imagen del cheque número 2167155 emitido por CSM por la cantidad de $4,199.96.

26. El Desglose de Pagos Totales que le cursó la Sra. Ana M. Bauzá Rosas, Ajustadora de Oficina de CSM, a la demandante Lynette Rodríguez Flores el 24 de noviembre de 2021 no explica [por qué] se aplicó un descuento por "depreciación".

27. El Desglose de Pagos Totales que le cursó la Sra. Ana M. Bauzá Rosas, Ajustadora de Oficina de CSM, a la demandante Lynette Rodríguez Flores el 24 de noviembre de 2021 no explica cómo se computó el referido 20% de "depreciación".

28. El Expediente de Reclamación que presentó CSM no refleja porqué las piezas a ser reemplazadas ameritaban un descuento por "depreciación" de 20%.

29. El Desglose de Pagos Totales preparada por [CSM] para la reclamación de la demandante señala que descontó $681.61 por alegada depreciación, pero no ofrece la razón para imponer la supuesta depreciación. Ver Anejo 2 de [CSM], pág. 9.

30. El Expediente de Reclamación que presentó CSM no explica cómo se computó el referido 20% de "depreciación".

31. El Expediente de Reclamación que presentó CSM no documenta ni contiene un análisis de las condiciones previo [al] accidente de las piezas que CSM determinó que

habrían de ser reemplazadas como consecuencia del accidente.

32. El Expediente de Reclamación que presentó CSM no explica de qué forma la instalación de las piezas requeridas para reparar el vehículo de la demandante habría de aumentar el valor o la vida útil al automóvil asegurado.

33. El 29 de noviembre de 2023[,] la demandante firmó el Desglose de Pagos Totales donde CSM restó $681.61 por depreciación de un 20% y donde calculó un pago neto de $4,199.96.

34. El Desglose de Pagos Totales que firmó la demandante no contiene lenguaje alguno que indique que la demandante está conforme con el ajuste.

35. La demandante endosó el cheque número 2167155.

36. El cheque número 2167155 que sometió CSM con su moción de sentencia sumaria tiene lenguaje en su reverso que está redactado en letras bien pequeñas, y en minúscula, que son difíciles de discernir y que además no son conspicuas.

37. El cheque número 2167155 que sometió CSM con su moción de sentencia sumaria no contiene una advertencia conspicua a los efectos de que el instrumento fue ofrecido como pago total de la reclamación.

38. El cheque número 2167155 que sometió CSM con su moción de sentencia sumaria no contiene una advertencia que una persona razonable, que será afectada por el mismo, debidamente quede advertid[a] a los efectos de que el instrumento fue ofrecido como pago total de la reclamación.

39. CSM tiene preimpreso una Carta de Derechos de los Asegurados, en los idiomas inglés y español, que preparó conforme la Ley Núm. 14 del 4 de enero de 2020, copia de la cual forma parte del expediente de la reclamación de la demandante.

40. En su Carta de Derechos de los Asegurados, CSM [les] informa a los asegurados que tienen derecho a recibir, de la persona que maneja la póliza, una orientación clara y completa sobre la cubierta, y sus limitaciones y exclusiones.

41. En su Carta de Derechos de los Asegurados, CSM [les] informa a los asegurados que tienen el derecho a que el asegurador incluya, en el ajuste, las razones por las cuales ciertas partidas de la reclamación fueron declinadas.

42. Del expediente de la reclamación no surge que a la demandante se le diera una explicación de las razones de CSM para aplicarle un descuento por alegada depreciación que la Carta de Derechos de los Asegurados de CSM exigía se [les] diera a los asegurados.

43. El expediente de CSM de la reclamación de la demandante contiene un formulario titulado "Comprobación de Pérdida Automovilística".

44. La "Comprobación de Pérdida Automovilística" preparada por CSM para la reclamación de la demandante señala que descontó $681.61 por alegada depreciación, pero no ofrece la razón para imponer la supuesta depreciación.

45. El expediente de reclamación de CSM para la reclamación 079710068 contiene una Guía de Ajuste que aparenta ser utilizada por el ajustador como hoja de cotejo.

46. La Guía de Ajuste utilizada por CSM para la reclamación 079710068 no instruye, requiere, orienta o sugiere al ajustador una depreciación por alegada depreciación.

47. La Guía de Ajuste utilizada por CSM para la reclamación 079710068 le instruye al ajustador "preparar su estimado Mitchell".

48. El expediente de reclamación de CSM para la reclamación 079710068 contiene un estimado preparado por Executive Collision Service, con una referencia que lee "Mitchell 911351". Al pie del documento, en su esquina izquierda, "Mitchell Data Version: OEM AUGU_21_V" y al pie en el negro lee: "Copyright (C) 1994-2021 Mitchell International".

49. En cada Desglose de pagos que preparó CSM para la reclamación 079710068, CSM calculó el "Estimado de Piezas Netas" en $3,408.05.

50. La suma de $3,408.05 calculada en el "Estimado de Piezas Netas" del Desglose de Pagos de CSM es igual al "Total Replacement Parts" que se desglosa en el estimado Mitchell 911351.

51. El estimado Mitchell 922351 en que CSM aparentemente descansó contempla un ajuste de $250.00 por concepto de deducible, pero no contempla descuento alguno de cantidad alguna por alegada depreciación.

El TPI concluyó que las cartas de la OCS en contestación a dos (2) ciudadanos no constituyeron determinaciones administrativas que merecieran deferencia alguna. Esto, en vista de que no existió indicio alguno que demostrara que previo a emitir dichas cartas se celebrara vista adjudicativa alguna o que se desfilara prueba, y en las mismas no se formulan determinaciones de hechos. Tras evaluar el documento, el Foro Primario estableció que las expresiones vertidas en las referidas cartas, a lo sumo, son conclusiones de derecho, las cuales podían ser examinadas por los tribunales en todos sus aspectos. Asimismo, el TPI estableció que en las aludidas cartas, la OCS cerró el expediente de los ciudadanos que solicitaron la investigación, por lo que el hecho de que el ente administrativo haya optado por no iniciar un procedimiento administrativo en contra de Seguros Múltiples no exoneró a la aseguradora ni estableció una presunción de legalidad de su práctica de aplicar automáticamente deducciones por una alegada depreciación en una reclamación por pérdida parcial.

Con relación a la doctrina de pago en finiquito, el TPI estableció que la cantidad en controversia, lejos de ser ilíquida, era la suma precisa de $681.61, pues no estaba en disputa el estimado de costos, sino la procedente del descuento por depreciación. El

Foro Primario consignó que el expediente de reclamación de Seguros Múltiples no ofreció un análisis o explicación de la razón de aplicar un descuento por depreciación al costo de las piezas a ser instaladas al reparar el vehículo de la señora Rodríguez Flores ni un análisis o explicación de cómo se determinó los por cientos de depreciación que se aplicaron inicial ni finalmente. A su vez, señaló que Seguros Múltiples no estableció una base fáctica válida para aplicar el descuento por una alegada depreciación de manera uniforme a todas las piezas a ser reemplazadas. Además, especificó que Seguros Múltiples no estableció que el pago se ofreció de buena fe. El TPI denotó que Seguros Múltiples no le ofreció a la señora Rodríguez Flores ni al señor Dunnam una explicación para reducir el descuento por depreciación de un 30% a un 20%, ya que sólo envió el Desglose de Pago enmendado, con copia del cheque. Con relación a la declaración conspicua de que el pago se realizó en pago total del reclamo, el TPI resaltó que el texto en que descansó Seguros Múltiples era ilegible, más no se emplearon los métodos recomendados por el Tribunal Supremo en *Feliciano Aguayo v. MAPFRE*, 207 DPR 138 (2021).

Por último, el TPI le otorgó la razón a la alegación de la señora Rodríguez Flores de que Seguros Múltiples no podía impedirle cuestionar la legalidad del descuento por la alegada depreciación bajo la defensa de pago en finiquito sin primero adjudicar si el descuento era lícito o no. El Foro recurrido determinó que si en su día concluía que el descuento por la alegada depreciación que le practicó a la reclamación no era lícito, significaría que Seguros Múltiples incurrió en una práctica desleal prohibida por el Código de Seguros, 26 LPRA sec. 2716a. El TPI contempló que, de ser así, Seguros Múltiples carecería de manos limpias para invocar la defensa de pago en finiquito, por lo que hubo una disputa u oferta de buena fe.

En vista de lo anterior, el Foro Primario estableció que, en su día en corte, a Seguros Múltiples le corresponde demostrar la legalidad de la aplicación de un descuento por depreciación en una reclamación de pérdida parcial, la razonabilidad del método utilizado para calcular la depreciación y la base fáctica para aplicar dicho descuento. Ello, a tenor con los mecanismos de descubrimiento de prueba que les asisten a ambas partes, de conformidad con las Reglas de Procedimiento Civil, 32 LPRA Ap. V.

El 15 de mayo de 2024, Seguros Múltiples presentó una *Moción de Reconsideración y de Enmiendas o Determinaciones Adicionales*.[7] En lo concerniente a las determinaciones de hechos adicionales, Seguros Múltiples precisó que el TPI debía dar por admitido los siguientes hechos adicionales, los cuales estaban relacionados a una investigación conducida por la OCS en un caso distinto al de marras:

1. El 11 de agosto de 2022, se culminó el ajuste y se extendió una oferta al asegurado por la cantidad de $2,144.65, luego de descontado el deducible aplicable de $500.00 y un 40% de depreciación.
2. El 12 de agosto de 2022, el asegurado indicó no estar de acuerdo con la oferta y solicitó que se reconsiderara el [por ciento] de depreciación aplicado.
3. El 26 de agosto de 2022[,] la CSM modificó la depreciación aplicando únicamente un 25% pago por la cantidad de $2,254.25.
4. El 6 de septiembre de 2022[,] el asegurado informó que rechazaba la oferta. En esa misma fecha, la CSM se reafirmó en la oferta de pago.
5. El 15 de septiembre de 2022, el Sr. José R. Nieves, presentó ante la OCS una Solicitud de Investigación con relación al ajuste de una reclamación que éste le presentó a la CSM con arreglo a la póliza de su auto personal número PAP-4837683.
6. Entre las múltiples inconformidades levantadas por el asegurado en su Solicitud de Investigación, éste sostuvo no estar de acuerdo "con la depreciación de piezas que no tienen desgaste".

En torno a la deferencia judicial a las determinaciones de la OCS, adujo que erró el Foro Primario al establecer que dichas cartas no merecen deferencia judicial por no ser producto de un procedimiento adjudicativo. Seguros Múltiples entendió que los

---

[7] *Íd.*, Anejo 2, págs. 19-88.

procesos administrativos no tienen que ser formales. Adicionalmente, Seguros Múltiples alegó que presuntamente el TPI basó su decisión en que dicha carta no se firmó por el Comisionado de Seguros ni por un juez administrativo. En lo que respecta a la doctrina de pago en finiquito, Seguros Múltiples arguyó que el Foro Primario realizó las siguientes conclusiones de derecho, las cuales entendió que eran erradas: (1) que en las controversia entre las partes se conocía la cantidad exacta reclamada; (2) que el ofrecimiento realizado por Seguros Múltiples no era una oferta, sino una comunicación en el cumplimiento de una obligación; (3) que Seguros Múltiples no actuó de buena fe y (4) que la declaración contenida en el instrumento negociable entregado a la señora Rodríguez Flores no era conspicuo, sino que era ilegible. Además, según Seguros Múltiples, el TPI erró al presuntamente establecer que la doctrina de pago en finiquito solamente aplicaba cuando existía una controversia en cuanto al monto de la obligación, más no sobre la obligación en sí. Entre otros asuntos, Seguros Múltiples alegó que el Foro *a quo* resolvió de manera definitiva que no aplicó la doctrina de pago en finiquito, dado que la aseguradora no probó buena fe, por lo que procedía era declarar No Ha Lugar su solicitud de sentencia sumaria para presentar prueba en un juicio plenario.

El 27 de junio de 2024, la señora Rodríguez Flores presentó una *Oposición a "Moción de Reconsideración y de Enmiendas o Determinaciones Adicionales"*.[8] A saber, planteó que el TPI no erró al rechazar el reclamo de que la OCS avaló en dos (2) ocasiones la aplicación de la depreciación en pérdidas parciales bajo pólizas de Seguros Múltiples, ya que las cartas en las que se comunicó la decisión no resultaron ser el producto de un proceso adjudicativo. Esgrimió que no se presentó evidencia alguna que señale que el Comisionado de Seguros haya delegado la función de presidir un

---

[8] *Íd.*, Anejo 13, págs. 770-801.

procedimiento adjudicativo a la Directora de la División de Investigaciones y al Oficial de Servicios al Consumidor Principal, quienes suscribieron las aludidas cartas. Por otra parte, la señora Rodríguez Flores puntualizó, que, contrario a lo aducido por Seguros Múltiples, el TPI no dispuso que el descuento por depreciación era ilegal, sino que declaró No Ha Lugar a la Moción de Sentencia Sumaria presentada por Seguros Múltiples, sin que constituyera una adjudicación sobre la legalidad o no del descuento por depreciación, el cual debía ser probado en el juicio plenario. En torno a la aplicación de la doctrina de pago en finiquito, la señora Rodríguez Flores manifestó que el Foro Primario actuó correctamente al alegadamente rechazar la aplicación de la doctrina de pago en finiquito.

Por su parte, el 10 de julio de 2024, Seguros Múltiples presentó una *Réplica a "Oposición a Moción de Reconsideración y Enmiendas o Determinaciones Adicionales".*[9] Entre otros asuntos, argumentó que procedía la solicitud de determinaciones adicionales, toda vez que su solicitud cumplió con lo requerido por las Reglas de Procedimiento Civil, *supra.* En lo atinente al pago en finiquito, Seguros Múltiples arguyó que ambas partes realizaron concesiones, dado que la aseguradora redujo la depreciación de un 30% a un 20% y la señora Rodríguez Flores aceptó la concesión y la depreciación de un 20%, lo que representó un 10% menos de lo que se le ofreció inicialmente.

Tras considerar las posturas de ambas partes, el 30 de agosto de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la Moción de Reconsideración de Seguros Múltiples.[10]

---

[9] *Íd.,* Anejo 14, págs. 802-808.
[10] *Íd.,* Anejo 3, pág. 89.

Inconforme, el 30 de septiembre de 2024, Seguros Múltiples presentó un recurso de *certiorari* en el que planteó que el TPI incidió en cometer los siguientes errores:

**PRIMER SEÑALAMIENTO DE ERROR:** INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA MOCIÓN DE SENTENCIA SUMARIA Y NO RESOLVER QUE, CONFORME LA PÓLIZA DE SEGUROS EXPEDIDA POR LA PETICIONARIA, ES VÁLIDO LA APLICACIÓN DE LA DEPRECIACIÓN DE PIEZAS EN REPARACIONES PARCIALES, Y QUE ASÍ LO HA INTERPRETADO LA OFICINA DEL COMISIONADO DE SEGUROS.

**SEGUNDO SEÑALAMIENTO DE ERROR:** INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONERLE EL PESO DE LA PRUEBA PARA ESTABLECER LA LEGALIDAD DE LA APLICACIÓN DE UN DESCUENTO POR DEPRECIACIÓN EN UNA RECLAMACIÓN DE PÉRDIDA PARCIAL, LA RAZONABILIDAD DEL MÉTODO UTILIZADO PARA CALCULAR LA DEPRECIACIÓN, Y LA BASE FÁCTICA PARA DICHO DESCUENTO.

**TERCER SEÑALAMIENTO DE ERROR:** INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EN EL PRESENTE CASO NO APLICA LA DOCTRINA DE PAGO EN FINIQUITO.

**CUARTO SEÑALAMIENTO DE ERROR:** INCIDIÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCARTAR HECHOS MATERIALES SUSTENTADOS CON EVIDENCIA DOCUMENTAL PROMOVIDOS POR LA CSM Y NO CONTROVERTIDOS POR LA DEMANDANTE, AL INCLUIR DETERMINACIONES DE HECHO QUE NINGUNA DE LAS PARTES PROPUSO, Y AL ACOGER PROPUESTAS DE HECHOS PRESENTADAS POR LA DEMANDANTE SIN APOYO EN LA PRUEBA REFERENCIADA.

En su primer señalamiento de error, Seguros Múltiples sostuvo que al TPI no realizar una determinación sobre la legalidad del descuento por depreciación que se le aplicó a la reclamación de la señora Rodríguez Flores, ignoró las cláusulas contractuales que permitían la aplicación de la depreciación, la definición universal del valor real en efectivo o *actual value cash* y los pronunciamientos de la OCS. Asimismo, planteó que el Foro Primario incidió al resolver que las cartas emitidas por la OCS no constituyeron determinaciones administrativas que merezcan deferencia judicial. Esto, puesto que entendió que el Foro recurrido interpretó erróneamente el *Código de Seguros, supra,* su Reglamento y la *Ley*

*de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*

En su segundo señalamiento de error, Seguros Múltiples alegó que erró el TPI al imponer la carga probatoria a la aseguradora, toda vez que la señora Rodríguez Flores no probó su alegación en cuanto a que la depreciación era ilegal; que el método utilizado por la aseguradora para calcular la depreciación era irrazonable y que la base fáctica para aplicar el descuento era incorrecta. Seguros Múltiples arguyó que el TPI se confundió en su interpretación de la cláusula contractual que permitía aplicar la depreciación.

Como tercer señalamiento de error, Seguros Múltiples alegó que el TPI determinó incorrectamente que la doctrina de pago en finiquito era inaplicable por la reclamación ser líquida; su ofrecimiento de pago deberse a una obligación; no actuar de buena fe, y ser una declaración ilegible. Seguros Múltiples afirmó que existía una controversia *bona fide* sobre la interpretación de la póliza. Pues, sostuvo que la alegación de la señora Rodríguez Flores en que la póliza no permitía un descuento por depreciación en el caso de pérdidas parciales era incorrecta, ya que la OCS ha avalado dicha depreciación. Asimismo, consideró que la determinación del TPI en que la aseguradora no actuó de buena fe no se sostuvo por base legal alguna. Por otro lado, Seguros Múltiples estableció que inicialmente ofreció aplicar una depreciación de 30% que, ante el rechazo de la señora Rodríguez Flores, posteriormente se redujo a 20%. La aseguradora concibió que esta reducción no se realizó como parte del descargo de su deber legal, sino de un acto voluntario en el proceso de negociación. Además, que en vista de que la señora Rodríguez Flores aceptó la oferta del 20% de descuento por depreciación, cedió al mismo y actuó en contra de sus propios actos, por lo que pretendía cobrar por una deuda

inexistente. Sobre el particular, añadió que la señora Rodríguez Flores conocía que estaba relevando a Seguros Múltiples, ya que su esposo era un conocedor de la industria de seguros. Con respecto a la ilegibilidad de la copia del instrumento negociable, Seguros Múltiples planteó que el TPI erró al no acoger la presentación de un modelo que sustentara el cumplimiento con lo establecido en *Feliciano Aguayo v. MAPFRE, supra.*

Como cuarto señalamiento de error, Seguros Múltiples indicó que el TPI indició al no acoger los hechos adicionales promovidos por la aseguradora, los cuales eran pertenecientes a una investigación realizada por la OCS.

Por su parte, la señora Rodríguez Flores aseveró que el TPI no erró al concluir que las cartas emitidas por la OCS no eran unas determinaciones administrativas, producto de un procedimiento adjudicativo. La señora Rodríguez Flores precisó que las cartas no resultaron de un proceso adjudicativo, no las emitió un oficial examinador ni un juez administrativo, ni el Comisionado de Seguros dispuso de ellas mediante una resolución sumaria. Enfatizó que estas cartas no constituyen órdenes o resoluciones; no exponían por separado determinaciones de hechos ni conclusiones de derecho, no advirtieron sobre el derecho a solicitar reconsideración o revisión judicial ante este Tribunal. Al mismo tiempo, la señora Rodríguez Flores apuntó que si bien la póliza objeto de este caso indica que en el caso de pérdida total se aplicará un ajuste por depreciación y condición física del vehículo, no se dispone nada con respecto a una pérdida parcial. Igualmente, esbozó que la depreciación no es intrínseca al ajustar una reclamación por pérdida parcial. La señora Rodríguez Flores cuestionó que Seguros Múltiples no presentó prueba sobre cómo las piezas a ser reemplazadas en un automóvil habrían de mejorar el vehículo para sustentar la depreciación.

También, manifestó que Seguros Múltiples nunca le explicó la razón del por ciento por depreciación o cómo se computó dicho por ciento.

Respecto al segundo señalamiento de error, la señora Rodríguez Flores expuso que el TPI no cometió el error de requerir a Seguros Múltiples probar la legalidad de la aplicación del descuento por la alegada depreciación en una reclamación de pérdida parcial, la razonabilidad del método utilizado para calcular la depreciación y la base fáctica para dicho descuento. Al respecto, destacó que del monto que Seguros Múltiples estimó necesario para reparar su vehículo, descontó una cantidad por depreciación, por lo que tiene que probar la procedencia del descuento que realizó.

Referente al tercer error, la señora Rodríguez Flores subrayó que el TPI no erró al determinar que no aplicó la doctrina de pago en finiquito, ya que Seguros Múltiples no probó la existencia de una reclamación ilíquida o una disputa de buena fe. Esto, al entender que la cantidad en controversia es la suma de $681.61 de la deducción por concepto de depreciación de 20% por las piezas de su vehículo. La asegurada señaló que Seguros Múltiples no realizó una oferta de pago de buena fe, ya que, a tenor con lo resuelto en *Feliciano Aguayo v. MAPFRE, supra,* una oferta de pago realizada por un asegurador en el ajuste de una reclamación no podía considerarse como pago en la liquidación. Precisó que, más aún, no existía evidencia de que reducir la depreciación de un 30% a un 20% fuese una concesión por parte de Seguros Múltiples en una controversia *bona fide*. Expresó que ante la ausencia de justificación documentada para el descuento por la depreciación en el expediente de Seguros Múltiples divisó que dicho descuento se impuso de manera arbitraria. Asimismo, alegó que Seguros Múltiples no probó que su oferta de pago transmitió claramente la intención de resolver su reclamación. Destacó que Seguros Múltiples se ofreció a presentar un modelo legible del cheque, sin así realizarlo. La señora

Rodríguez Flores planteó que Seguros Múltiples carece de manos limpias para invocar la doctrina de pago en finiquito. A tal efecto, concretó que tanto en el Desglose Total de Pagos, así como en la Comprobación de Pérdida Automovilística que le presentó Seguros Múltiples no incluía los $681.61 deducidos por concepto de depreciación, en contravención a la Regla 47 del Reglamento del Código de Seguros, Reglamento Núm. 2080, Departamento de Estado, 6 de abril de 1976. Por ello, entendió que la Cooperativa no podía impedir que cuestionara la legalidad del descuento por depreciación bajo la defensa de pago en finiquito, ya que el mismo no era legal. Estableció que Seguros Múltiples venía obligado a realizar el pago que estimó, sin imponer una depreciación de 20% sin explicación alguna y pretender condicionar el pago a que la asegurada relevara a la aseguradora de los $681.61. Estimó que dicha práctica era engañosa, a tenor con Regla 47 del Reglamento del Código de Seguros, *supra*, R. 47. Esbozó que la acción de "[requerir] que el asegurado reclamante firme un relevo que pueda ser interpretado como que releva al asegurador de aquellas obligaciones contractuales que no fueron objeto de la transacción" se considera una práctica engañosa, a tenor con el Artículo 27.161 del Código de Seguros, *supra*, sec. 2716a.

Por último, con relación al cuarto error, la señora Rodríguez Flores alegó que el TPI no erró al no añadir las determinaciones de hechos propuestas por el Seguros Múltiples, toda vez que están relacionadas con el argumento de que el Foro Primario le debe otorgar deferencia judicial a la OCS.

En atención a los errores planteados por Seguros Múltiples, pormenorizamos la normativa jurídica pertinente a este recurso.

**II.**

**A. *Certiorari***

El *certiorari* es el vehículo procesal que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *McNeill Healthcare LLC v. Municipio De Las Piedras*, 206 DPR 391, 404 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Mediante este recurso extraordinario se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra,* pág. 847. Contrario al recurso de apelación, el foro apelativo posee la facultad discrecional de expedir o denegar el recurso de *certiorari* toda vez que, de ordinario, se tratan de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, dispone taxativamente las instancias en las que el Tribunal de Apelaciones posee autoridad para expedir el auto de *certiorari* sobre un asunto interlocutorio civil. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). En lo pertinente, si el asunto interlocutorio planteado no se encuentra dentro de las instancias que el ordenamiento jurídico otorga autoridad para intervenir, no se puede atender la controversia. El referido artículo dispone que el foro apelativo intermedio solamente expedirá un recurso de *certiorari* relacionado a una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o a la denegación de una moción de carácter dispositivo. Véase Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1. A su vez, a modo de excepción, este tribunal puede revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos

esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

El propósito de esta regla es evitar la dilación que causaría la revisión judicial de las controversias que podrían ser planteadas en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra,* pág. 486; *800 Ponce de León v. AIG, supra,* pág. 175; *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 593-594 (2011). Ahora bien, "el hecho de que un asunto esté comprendido dentro de las materias susceptibles a revisión no justifica la expedición del auto sin más". *Medina Nazario v. McNeill Healthcare LLC, supra.*

Por otro lado, la Regla 40 del *Reglamento del Tribunal de Apelaciones, supra,* R. 40, establece los criterios que debemos considerar en el ejercicio de la facultad discrecional al momento de atender una petición de *certiorari.*

A saber, con el objetivo de ejercer sabiamente la facultad discrecional, el foro apelativo intermedio debe considerar:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

### B. Sentencia sumaria

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos

materiales. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro*, 2023 TSPR 120, 213 DPR ___ (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra*; *Banco Popular v. Posada*, 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. Además, la controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra*. En otras palabras, debe ser de calidad suficiente para que el juzgador dirima por virtud de un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).

Por otra parte, la parte que se opone a la solicitud de sentencia sumaria deberá refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v.*

*Supermercado Los Colobos, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que deberá contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra*; *Ramos Pérez v. Univisión, supra,* pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c). De lo anterior, incluso si no se presenta prueba para controvertir la evidencia presentada, ello no conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Econo y otro, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

Respecto a la oposición a una solicitud de sentencia sumaria, se sostiene, además que, la Regla 36.3 (b) de Procedimiento Civil, *supra,* R. 36.3 (b), establece que, "[l]a contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación. . .". Por ello, "[s]i la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal". *Íd.*

El más alto foro estableció en *Meléndez González et al. v. M. Cuebas, supra,* el estándar específico que este Tribunal de Apelaciones debe seguir al revisar denegatorias o concesiones de solicitudes de sentencia sumaria.

Primero, nos encontramos en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. *Íd.*, pág. 118. En otras palabras, se aplicarán los mismos criterios que la Regla 36 de Procedimiento Civil, *supra,* R. 36, le exige al foro *a quo.* Así pues, este Tribunal está llamado a llevar a cabo una revisión *de novo.* Sin embargo, no podemos considerar evidencia

que las partes no presentaron ante el TPI, y debemos examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria, realizando todas las inferencias permisibles a su favor. *Meléndez González et al. v. M. Cuebas, supra*, pág. 116.

Segundo, al encontrarnos en la misma posición que el foro *a quo*, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, y los discutidos en el caso de *SLG Zapata- Rivera v. J.F. Montalvo, supra*; *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

Tercero, nuestro Tribunal debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. *Meléndez González et al. v. M. Cuebas, supra*.

Cuarto y último, si este Tribunal determina que no existen hechos materiales en controversia, entonces procederemos a revisar si el TPI aplicó correctamente el derecho. *Íd.,* pág. 119.

### C. Seguros

La materia de seguros está investida de alto interés público debido a que desempeña un trascendental rol en la protección de riesgos que amenazan la vida o el patrimonio de los ciudadanos. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 1004 (2023); *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706-707 (2017); *Natal Cruz v. Santiago Negrón et al.*, 188 DPR 564, 575-576 (2013). De esta forma, la industria de seguros está extensamente regulada por el Código de Seguros, *supra,* y supletoriamente por el Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.*

El contrato de seguro es definido como aquel "mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102. De producirse el suceso incierto previsto en el contrato de seguro, su propósito radica en proteger al asegurado mediante la transferencia del riesgo que asumió la compañía aseguradora a cambio del pago de la prima. *RJ Reynolds v. Vega Otero, supra*, pág. 707; *Natal Cruz v. Santiago Negrón et al., supra*, pág. 576; *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009).

Los términos acordados entre el asegurado y la aseguradora están contenidos en la póliza. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012). "La póliza es el instrumento escrito en que se expresa un contrato de seguro". 26 LPRA sec. 1114 (1). Las cláusulas contenidas en la póliza constituyen la ley entre las partes. *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 897; *SLG Francis-Acevedo v. SIMED, supra*, pág. 386. El Código de Seguros dispone las normas hermenéuticas que los tribunales deben atribuirles a los contratos de seguros. *RJ Reynolds v. Vega Otero, supra*; *Echandi Otero v. Stewart Title*, 174 DPR 355, 369 (2008). A saber, "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". 26 LPRA sec. 1125. Los términos esbozados en la póliza deben ser interpretados en su acepción general, sin ceñirse demasiado al rigor gramatical. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1020 (2020); *Echandi Otero v. Stewart Title, supra*, pág. 370; *Marín v. American Int' l. Ins. Co. of PR*, 137 DPR 356, 361 (1994). "Sin embargo, si de la póliza se desprende un significado particular para determinado término, este

se aplicará a tenor con lo convenido por las partes". *SLG Francis-Acevedo v. SIMED, supra*, pág. 387. A tal efecto, los tribunales deben interpretar los términos según su acepción general, como lo interpretaría una persona de inteligencia promedio que pretenda adquirir la póliza. *Íd.*; *Serrano Picón v. Multinational Life Ins., supra*; *Rivera Matos et al. v. Triple-S et al., supra*; *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 898; *Quiñones López v. Manzano Posas*, 141 DPR 139, 155 (1996).

Es norma trillada que un contrato de seguro es un contrato de adhesión, debido a que la aseguradora es la parte que dicta los términos y las condiciones expuestas en la póliza. *SLG Francis-Acevedo v. SIMED, supra*, pág. 386; *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 899; En este sentido, toda ambigüedad se debe interpretar en favor del asegurado, por vía de una interpretación razonable. *Serrano Picón v. Multinational Life Ins., supra*; *SLG Francis-Acevedo v. SIMED, supra*, pág. 386; *Echandi Otero v. Stewart Title, supra*. Ahora bien, cuando las cláusulas sean claras y libres de ambigüedad, esta norma hermenéutica no aplicará y el asegurado se ceñirá por los términos de la póliza. *Maderas Tratadas v. Sun Alliance et al., supra*. Los términos de un contrato son claros cuando no dan lugar a duda, ambigüedad o divergencia en interpretaciones. *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1021; *SLG Francis-Acevedo v. SIMED, supra,* pág. 387.

Por otro lado, el asegurado debe demostrar que la acción u omisión que dio base a la causa de acción está cubierta por el contrato de seguros. *US Fid. & Guard. Co. v. Tribunal Superior*, 85 DPR 131, 133 (1962). Establecido esto, la aseguradora debe demostrar el límite de su responsabilidad. *Íd.*

### D. Pago en finiquito

El pago en finiquito es una forma de extinguir las obligaciones. *Feliciano Aguayo v. MAPFRE, supra*, pág. 159. Para

que esta figura opere, deben concurrir los siguientes requisitos: (1) una reclamación ilíquida o sobre la cual exista una controversia *bona fide*; (2) un ofrecimiento de pago por el deudor; (3) una aceptación del ofrecimiento de pago por el acreedor y (4) la ausencia de opresión o ventaja indebida de parte del deudor sobre el acreedor. *Íd.*; *Torres et als. v. MAPFRE*, 207 DPR 779, 783 (2021); *HR Elec., Inc. v. Rodríguez*, 114 DPR 236, 241 (1983).

Es meritorio puntualizar que el ofrecimiento de pago debe ser realizado de buena fe e ir acompañado por declaraciones que indiquen claramente que representa un pago total, completo y definitivo de la deuda. *Íd.* Es decir, debe constatarse que el acreedor tiene un claro entendimiento de que el pago representa la extinción de la obligación. *Torres et als. v. MAPFRE, supra.* El ofrecimiento de pago se perfecciona una vez el acreedor retiene el cheque y consiente que el instrumento se remitió en concepto de pago y saldo total de la obligación. *Feliciano Aguayo v. MAPFRE, supra,* pág. 163.

Ahora bien, la figura del pago en finiquito no se manifiesta en las controversias relacionadas a la industria de seguros meramente por la concurrencia de un ofrecimiento de pago, una notificación del cierre de la reclamación y el cambio del cheque por parte del asegurado. *Torres et als. v. MAPFRE, supra*, pág. 784. Ello, debido a que el tribunal debe realizar una evaluación sobre la totalidad de las circunstancias y si se cumplió a cabalidad con los requisitos de la iliquidez o controversia bona fide sobre la reclamación; si el pago se emitió por una obligación estatutaria y si existió ausencia de opresión o ventaja indebida. *Íd.*; *García Bermúdez v. Coop. Seg. Múltiples*, 207 DPR 1015, 1021 (2021); Díaz Altagracia v. MAPFRE, 207 DPR 764, 769 (2021); *Adorno Maldonado v. Coop. Seg. Múltiples*, 207 DPR 740, 755 (2021). Más importante aún, "debe examinarse la existencia de circunstancias claramente indicativas para el acreedor de lo que representaba el cheque; si ocurrió una

orientación clara a tales fines, y si la carta que envió la aseguradora cumplió con las reglas de trato justo y advirtió de forma conspicua que el instrumento fue ofrecido en pago total de la reclamación". *Torres et als. v. MAPFRE, supra.* A saber, el tribunal debe constatar que el asegurado entendió claramente las consecuencias de aceptar el pago y la imposibilidad de reclamar a la aseguradora de estar inconforme con lo que se le ofreció. *Íd.,* pág. 786.

### E. Determinaciones de hechos adicionales

Una parte adversamente afectada por una sentencia tiene la facultad para presentar una moción solicitando determinaciones iniciales o adicionales de hechos o conclusiones de derecho, al amparo de la Regla 43 de Procedimiento Civil, *supra,* R. 43. *SLG Szendry-Ramos v. F. Castillo,* 169 DPR 873, 879-880 (2007). La razón principal para solicitar determinaciones adicionales es que el juzgador quede satisfecho en que atendió todas las controversias, a la vez que permite que los foros apelativos estén completamente informados sobre la base decisiva. *Íd., citando a* J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Puerto Rico, Publicaciones JTS, 2000, T. I, pág. 695. La Regla 43.1 de Procedimiento Civil, *supra,* R. 43.1, dispone lo siguiente:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes si éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, no haya presentado una moción para enmendarlas o no haya solicitado sentencia.

La utilización de la palabra "podrá" le imparte un carácter discrecional a la formulación de determinaciones de hechos y de

derechos adicionales. *Blas v. Hosp. Guadalupe,* 146 DPR 267, 319 (1998). A pesar de que este mecanismo le brinda al foro primario la oportunidad de enmendar cualquier error cometido y a su vez hacer justicia, "no está obligado a hacer determinaciones de hechos y de derecho adicionales luego de ser solicitadas por una o más partes; ello de estimar que las mismas no proceden". *Carattini v. Collazo Syst. Analysis, Inc.,* 158 DPR 345, 357 (2003).

Esbozada la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

### III.

En el presente caso, Seguros Múltiples nos solicita que revoquemos una *Resolución* emitida por el TPI en la que denegó su solicitud de dictar sentencia sumaria a su favor y determinó que la aseguradora tenía el peso de la prueba para demostrar la legalidad del descuento por concepto de depreciación que le aplicó a las piezas del automóvil de la señora Rodríguez Flores basado en su antigüedad y millaje.

Tras un análisis sosegado sobre la totalidad de las circunstancias y el tracto procesal de este caso, a tenor con los criterios expuestos en la Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1 y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* R. 40, determinamos prudente no ejercer nuestra función revisora en esta etapa de los procedimientos. Ello, pues la disposición recurrida no es contraria al derecho. El TPI determinó que, en su día en corte, a Seguros Múltiples le corresponde demostrar la legalidad de la aplicación de un descuento por depreciación en una reclamación de pérdida parcial, la razonabilidad del método utilizado para calcular la depreciación y la base fáctica para aplicar dicho descuento. Ello, a tenor con los mecanismos de descubrimiento de prueba que les asisten a ambas partes, de conformidad con las Reglas de Procedimiento Civil. Con

esta conclusión se disponen de los primeros dos señalamientos de error esgrimidos por la parte peticionaria.

En cuanto al tercer señalamiento de error, sobre la inaplicabilidad de la doctrina de pago en finiquito, en consideración a la situación fáctica presentada consideramos que no erró el TPI en dicha conclusión. De igual forma, y en cuanto a los hechos materiales adoptados por el TPI, una lectura *de novo* de las comparecencias de las partes ante dicho Foro nos lleva a coincidir con las determinaciones del Foro Primario. Conforme a la negativa del TPI de formular nuevas determinas de hechos y de derecho, basta señalar, tal y como fuera expuesto en la sección que antecede, que un tribunal no está obligado a formular determinaciones de hechos y de derecho adicionales de determinar que estas son improcedentes.

Por considerar que en el presente caso no medió abuso de discreción por parte del foro recurrido y tomando en consideración los criterios dispuestos en la Regla 40 de nuestro reglamento, *supra*, denegamos la expedición del auto solicitado. Un examen del expediente del asunto ante nuestra consideración no refleja la existencia de prejuicio, parcialidad o error craso y manifiesto en la actuación del TPI. Tampoco consideramos que mantener la determinación de dicho Foro represente un fracaso de la justicia.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones